intention of the legislature to secure a proper observance of the provisions of the law as expressed in these sections providing for penalties and forfeitures. The language of this section is unmistakable. It only permits the holder of a liquor tax certificate, against whom no complaint, prosecution, or action is pending, to surrender it, and obtain a rebate, and it in terms provides that this must be before arrest or indictment. The learned judge was clearly right in his view of this question. This disability is not confined by the statute to a violation during the term of the certificate to be surrendered, and a surrender or rebate can be applied for only upon a petition showing that no complaint, action, or prosecution based upon any violation of the statute is pending.

The order appealed from was right, and should be affirmed, with costs. All concur.

---

(59 App. Div. 419.)

### WAGNER v. BUFFALO & R. TRANSIT CO.

(Supreme Court, Appellate Division, Fourth Department. March 12, 1901.)

1. TRIAL—REQUESTS—INSTRUCTIONS ALREADY GIVEN—REQUESTED INSTRUCTION PROPERLY REFUSED.

In an action for damages to plaintiff's canal boat, sustained while in tow of the defendant's steamboat Kirk, by collision with the steamboat Alpha, the court instructed that if the pilot of the Kirk gave the signal to pass to the left, and under the circumstances prudence required him to keep to the right, the defendant was guilty of negligence, but, if the pilot of the Alpha gave the signals, it was the duty of the pilot of the Kirk to respond and pass to the left, unless there was imminent danger of a collision, in which case the pilot of the Kirk would be justified in not responding to the signal. *Held,* that it was not error for the court to refuse the plaintiff's instruction that the defendant was bound to exercise proper care and diligence, whether such care required an observance or departure from the general rules of navigation, and the defendant should not have attempted to pass to the left of the Alpha, in compliance with its signals, if care and prudence for the safety of plaintiff's boat required the disregarding of the signal, and that the law does not require a boat to obey a signal to pass either to the right or left, when to do so endangers the boat so signaled or boats in tow, as such requested instruction was covered by that given by the court.

2. SAME—NO EXCEPTION TO GENERAL CHARGE—REQUESTED INSTRUCTION.

Where no exception was taken to the main body of the charge, or to supplementary instructions given at defendant's request, it was not error for the court to refuse to give instructions requested by the plaintiff; the same being covered by those given.

Laughlin, J., dissenting.

Appeal from trial term, Monroe county.

Action by Martin Wagner against the Buffalo & Rochester Transit Company for injuries to his canal boat. From a judgment in favor of the defendant, the plaintiff appeals. Affirmed.

The defendant is a domestic corporation, engaged in the business of operating steamboats and towing boats on the Erie Canal. The plaintiff is the owner of a canal boat named the John Anson, which the defendant had agreed to tow from Rochester to Buffalo free of charge, and to pay the plaintiff the sum of $10 in case any freight was found between these two points for the defendant to carry. Pursuant to this agreement, the plaintiff's boat was taken in tow by the defendant's steamer the W. B. Kirk on the 24th day of October, 1899, and the two boats reached the village of Brockport at about midnight, where they remained until about 5 o'clock the next morning, when

they proceeded on their way to Buffalo. The John Anson was in charge of the plaintiff and another man in his employ, by the name of Henry Pfeiffer, and it was attached to the steamer by a towline which the plaintiff claimed was 140 feet in length. When about a mile west of Brockport boats were seen approaching from the west. They constituted what was termed the "steel fleet," and consisted of the steamer Alpha, a boat pushed by the Alpha, and four boats in tow, all of which were heavily loaded. When the two steamboats were about 60 rods apart, one of them, but which one is a matter involved in dispute, sounded two blasts with its whistle, which indicated that it would pass to the left, and the other steamer answered with the same number of blasts, which indicated that it understood the meaning of the signal. When the steamer Kirk was from 300 to 500 feet from the steel fleet, it changed its course to the left; but the plaintiff's boat for some reason failed to follow that course, in consequence of which it collided with the head towboat of the steel fleet, and received the injuries of which the plaintiff complains. The plaintiff's evidence tended to show that when the signals were given there was a strong wind blowing from the southwest, which kept his boat on the north side of the canal and prevented it from changing its course. The defendant's witnesses, upon the other hand, testified that the wind was light, and not of sufficient force to interfere with the course of the plaintiff's boat, but that the steersman of that boat made no effort to follow the Kirk, and that there was nothing whatever to prevent his crossing to the left, had the effort been made.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Heman W. Morris, for appellant.
John D. Burns, for respondent.

ADAMS, P. J. The plaintiff, in his complaint, seeks to recover damages of the defendant by reason of the negligence of the latter's agents and employés who were in charge of the steamer Kirk; the allegation being that the defendant's boat, on meeting the steel fleet, negligently attempted to pass to the left, whereas it should have turned to the right, in accordance with the provision of section 169 of the canal law (chapter 338, Laws 1894), which requires that:

"The master of a float (which includes every boat, vessel, raft, or floating thing navigating on the canals), meeting another float, shall turn to the right, so as to be wholly on the right side of the center of the canal."

It appears, however, that this requirement was subsequently quite materially modified by the general navigation law, which provides, among other things, that:

"(1) When two steamboats are meeting end on, or nearly end on, so as to involve risk of collision, each shall alter her course to starboard, so that each may pass on the port side of the other. * * * (9) When two steamboats are approaching each other, and if the course of such steamboats is so far on the starboard side of each other as not to be considered by the pilots as meeting end on, or nearly so, or if the steamboats are approaching each other in such manner that passing to the right as in rule one is deemed unsafe by the pilot of either steamboat, the pilot so first deciding shall give two short and distinct blasts on his steam whistle, which the pilot of the other steamboat shall answer promptly by two blasts of his steam whistle, and they shall pass to the left (on the starboard) side of each other." Laws 1897, c. 592, § 11, subds. 1, 9.

It is further provided by subdivision 14 of the same section, that:

"In construing these provisions, due regard must be had to all the dangers of navigation, and to any special circumstances which may exist, rendering a departure therefrom necessary in order to avoid immediate danger."

It seems plain, therefore, that, if the steamer Alpha was the first to give the signal mentioned in subdivision 9, it became the imperative duty of the defendant's servants in charge of the Kirk to change the course of that boat to the left, unless existing circumstances at the time were such as to fairly warrant the officer in command of that steamer in regarding a departure from the rule necessary in order to avoid immediate danger. This obviously was the theory upon which the case was tried and submitted to the jury; but it was contended upon the part of the plaintiff that the attempted change of course was in consequence of a signal given by the steamer Kirk, and that such attempt, under the circumstances, was negligence, for which the defendant was liable. As has already been stated, this contention was controverted by the defendant, and considerable evidence was given which tended to show that the signal came from the steamer Alpha, and the question of fact thus raised was submitted to the jury upon a charge which was concededly clear and impartial, and as to which no exception was taken by the plaintiff's counsel. But at the conclusion of the charge the court was asked by the defendant's counsel to instruct the jury that:

"If the pilot of the Alpha gave two short and distinct blasts on his steam whistle first, it was the duty of the pilot on the Kirk to answer promptly by two blasts of his steam whistle; and then the two steamers were required to pass to the left side of each other, and the plaintiff was not entitled to recover."

To this request the court replied:

"That is so, unless, while passing to the left, the defendant's employés were negligent, and could have prevented the accident by the exercise of reasonable care."

No exception was taken by the plaintiff's counsel to this instruction, but subsequently he asked the court to charge:

"In case the jury reach the conclusion that the Alpha signaled to pass to the left first, then the defendant, for the protection of the plaintiff's boat, was bound to exercise proper care and diligence in the management of its own boat, whether such care required an observance of or a departure from the general rules of navigation, and the defendant was not bound at all hazards to comply with signals from the Alpha to pass to the left; and if, under all the circumstances, reasonable care and prudence for the safety of plaintiff's boat dictated that it was safest and best to disregard the signal of the Alpha, it then became its duty to notify the officers on board the approaching steamer that the Kirk, with the plaintiff's boat in tow, could not without risk attempt to pass to the left, but that it would retain its position along the right side of the canal, and pass to the right of the approaching boats."

In response to this request the court stated that it declined to vary its charge, whereupon the plaintiff's counsel requested the court to charge:

"The law does not require a boat that has been signaled to pass either to the right or to the left of an approaching boat to obey such signal, when to do so is to endanger the boat so signaled or other boats which it may have in tow."

And to this request the learned trial court made substantially the same reply. To these two refusals the plaintiff's counsel duly excepted, and the exceptions thus taken raise the principal question relied upon for a reversal of the judgment and order appealed from.

In the body of his charge the learned court had instructed the jury that if they should find, from the evidence, that the pilot of the Kirk was the one who gave the signal to pass to the left, and that he gave the same at a time when, under all the circumstances, prudence required that he should keep to the right, they were at liberty to find the defendant guilty of negligence and responsible for the injury which followed; but that, upon the other hand:

"If the pilot of the Alpha, having these loaded boats in tow, deemed it more prudent or safe for the boats to pass to the left, and he so decided and gave the signals, it was the duty of the pilot of the Kirk to respond, unless there was imminent danger of collision. Unless danger was imminent, it was his duty to respond by passing to the left. If you find that there was not such imminent danger of collision as justified the pilot of the Kirk in not responding to the signal, it was his duty to pass to the left. It will be for you to say whether, under those circumstances, he could have prevented collision of the canal boat and the steel fleet by the use of reasonable care."

We think this statement of the law governing a case of this character was not only correct, but that it was virtually what the plaintiff's counsel sought to have covered by his two requests above referred to; and, if so, then the learned trial court was not bound, upon the insistence of counsel, to again charge the same rule of law, although the request so to do was clothed in slightly different language. Rexter v. Starin, 73 N. Y. 601; Quinn v. O'Keeffe, 9 App. Div. 68, 41 N. Y. Supp. 116. Where the court has charged sufficiently as to the duty of a person placed in a particular situation, counsel is not entitled to have further requests charged, the substance of which has been covered by the charge already made. This rule is one to which the courts have steadily adhered, and it is one which, we think, is especially applicable to this case, inasmuch as no exception was taken to either the main body of the charge or to such supplementary instructions as were given at the request of the defendant's counsel. We conclude, therefore, that the judgment and order appealed from should be affirmed.

Judgment and order affirmed, with costs. All concur, except LAUGHLIN, J., who dissents in a separate opinion.

LAUGHLIN, J. (dissenting). This action was brought to recover damages caused to plaintiff's canal boat by a collision alleged to have occurred through defendant's negligence. Plaintiff was the owner of the canal boat John Anson, which, on the morning of the 25th of October, 1899, was being towed from Rochester to Buffalo along the Erie Canal by defendant's steamboat, the W. B. Kirk. Plaintiff's boat had no cargo, and, as the wind was blowing hard from the south, it was very difficult for the steersman to keep the boat clear of the north bank of the canal. The evidence would have justified a finding that this was known to those on board the Kirk. At about 5 o'clock in the morning, and when in the neighborhood of a mile west of Brockport, a fleet of boats was discovered approaching from the west. These boats were being conveyed by the steamer Alpha, and are referred to in the evidence as the "steel fleet." When these approaching boats were from 500 to 700 feet apart, two whistles were given by one of the towing vessels, which were responded to by the

other; but there was a sharp conflict in the evidence as to whether the Kirk or the Alpha was the first to signal. The fleets thereupon, when from 300 to 500 feet apart, proceeded to change their course so as to pass on the left or starboard side. Those on board plaintiff's boat were unable to change her course, so as to follow the Kirk to the other side of the canal, and when the head vessel of the steel fleet struck the towline of plaintiff's boat the boats were brought together, resulting in a collision which sank plaintiff's canal boat. After the signals the boats slackened their speed. The Alpha was moving at the rate of from $2\frac{1}{2}$ to 4 miles an hour, and the Kirk had slackened down from a speed of about 5 miles an hour.

Section 169 of the canal law (chapter 338, Laws 1894) provides that:

"The master of a float meeting another float, shall turn to the right, so as to be wholly on the right side of the center of the canal."

Section 160 defines the term "float" as including "every boat, vessel, raft, or floating thing, navigated on the canals, or moved thereupon under the direction of some person having charge thereof," and defines "master" as including "every person having for the time the charge, control, or direction of any such float."

Subdivision 1 of section 11 of the navigation law (chapter 592, Laws 1897) provides that:

"When two steamboats are meeting end on, or nearly end on, so as to involve risk of collision, each shall alter her course to starboard, so that each may pass on the port side of the other."

Subdivision 5 of the same section provides as follows:

"Every vessel under steam, when approaching another steamboat or small boat or vessel of any kind, so as to involve the risk of collision, shall slacken her speed, or, if necessary, shall stop and reverse her engine, and every vessel under steam shall when in a fog go at a moderate speed."

Subdivision 9 provides that:

"When two steamboats are approaching each other, and if the course of such steamboats is so far on the starboard side of each as not to be considered by the pilots as meeting end on, or nearly so, or if the steamboats are approaching each other in such manner as passing to the right as in rule one is deemed unsafe by the pilot of either steamboat, the pilot so first deciding shall give two short and distinct blasts on his steam whistle, which the pilot of the other steamboat shall answer promptly by two blasts of his steam whistle, and they shall pass to the left (or starboard) side of each other."

Subdivision 14 provides that:

"In construing these provisions, due regard must be had to all the dangers of navigation, and to any special circumstances which may exist, rendering a departure therefrom necessary in order to avoid immediate danger."

If the first signal to pass to the left or starboard side was given by the Kirk, it was and is plaintiff's contention that defendant's negligence would then be clearly established. If, on the other hand, the first signal to so pass was given by the Alpha, defendant's liability would depend entirely upon other facts. Inasmuch as a general verdict only was rendered, the record fails to show how the jury decided the question of fact as to which steamer first gave the signals. It is thus evident that, if the jury were not properly instructed upon the law applicable to the facts, whichever way they might find them, a

new trial must be awarded, if the error is presented by an exception.

The court properly charged the jury that if the Kirk first gave the signals, and her tow was crowded to the north bank of the canal and held there by the wind, and the circumstances were such that it was unsafe and unreasonable to attempt to pass to the left, they might find the defendant guilty of negligence. The court then instructed the jury as follows:

"On the other hand, if the pilot of the Alpha, having these loaded boats in tow, deemed it more prudent or safe for the boats to pass to the left, and he so decided, and gave the signals, it was the duty of the pilot of the Kirk to respond, unless there was imminent danger of collision. Unless danger was imminent, it was his duty to respond and pass to the left. If you find that there was not such imminent danger of collision as justified the pilot of the Kirk in not responding to the signal, it was his duty to pass to the left. It will be for you to say whether, under those circumstances, he could have prevented collision of the canal boat and the steel fleet by the use of reasonable care. The only thing which the captain of the Kirk could do was to cast off the line and leave the canal boat at the north side of the canal, where it probably would have been safe.' You will determine which of the pilots gave the signal, and if it was first given by the pilot of the Kirk, and under such circumstances as constituted negligence on the part of the employés of the defendant, and if that occasioned the accident, your verdict may be for the plaintiff. If the signal was first given by the pilot of the Alpha, and was responded to by the pilot of the Kirk, as he was bound to do, you will determine whether there was anything which the employés of the Kirk could have done to avoid the injury which they did not do."

At the close of the main charge the counsel for the defendant requested the court to charge that:

"If the pilot of the Alpha gave two short and distinct blasts on his steam whistle first, it was the duty of the pilot of the Kirk to answer promptly by two blasts of his steam whistle, and that then the two steamers were required to pass to the left side of each other, and the plaintiff was not entitled to recover."

To this the court responded as follows:

"That is so, unless, while passing to the left, the defendant's employés were negligent, and could have prevented the accident by the exercise of reasonable care."

Plaintiff's counsel did not except to any of the foregoing provisions of the charge; but, immediately after the charge given at the request of defendant's counsel, he requested the court to instruct the jury as follows: .

"In case the jury reach the conclusion that the Alpha signaled to pass to the left first, then the defendant, for the protection of plaintiff's boat, was bound to exercise proper care and diligence in the management of its own boat, whether such care required an observance of or a departure from the general rules of navigation, and the defendant was not bound at all hazards to comply with signals from the Alpha to pass to the left; and if, under all the circumstances, reasonable care and prudence for the safety of plaintiff's boat dictated that it was safest and best to disregard the signal of the Alpha, it then became its duty to notify the officers on board the approaching steamer that the Kirk, with the plaintiff's boat in tow, could not without risk attempt to pass to the left, but that it would retain its position along the right side of the canal, and pass to the right of the approaching boats."

The court declined to vary the charge in that respect, to which ruling plaintiff's counsel duly excepted. Plaintiff's counsel thereupon asked the court to charge:

"The law does not require a boat that has been signaled to pass either to the right or to the left of an approaching boat to obey such signal, when to do so is to endanger the boat so signaled or other boats which it may have in tow."

The court declined to vary the charge, and plaintiff's counsel duly excepted.

This is not a case of a multitude of somewhat similar or misleading requests framed for the purpose of entrapping the court into committing some error. Defendant's counsel presented but two requests, and plaintiff's counsel presented only two. While the court in the body of the charge fairly stated the correct rule of law upon this question,—that, if the signals were first given by the Alpha, it was the duty of the pilot of the Kirk to accede thereto, unless by so doing there was immediate danger of collision,—yet the last sentence was misleading, in that it stated unequivocally that in such case the pilot of the Kirk was bound to respond, and eliminated the circumstance of immediate danger, which would relieve him from such obligation. Probably this would not constitute reversible error, even if an exception had been taken thereto; but the purpose of defendant's counsel's request to charge, which was granted by the court, was to modify the first part of the main charge in this regard, and to make it clear to the jury that the defendant's pilot had no discretion, and nothing to say as to the side upon which the boats should pass, provided the signals were first given by the pilot of the Alpha. The provision of the canal law hereinbefore quoted, and rule 1 of the navigation law, also quoted, prescribed the general rule for vessels navigating the canal, and required that they should pass to the right or port side. The exception is provided in rule 9 for cases where the pilot of either of the approaching steamers deems it unsafe to pass to the right, and in such case such pilot shall signify his determination in that regard by two short and distinct blasts of the whistle. Under ordinary circumstances it then becomes the duty of the pilot of the other steamboat to answer by two blasts of the whistle, and the boats are required to pass to the left side of each other. It is, however, manifest that rules 5 and 14, also quoted, were designed to authorize a departure even from rule 9 where the dangers of navigation or any special circumstances rendered a departure therefrom necessary in order to avoid a collision. The pilot of the Kirk, in such emergency, instead of responding with two whistles, could have given a danger or other signal, and both fleets could have slowed down; the Alpha stopping, if necessary, if she could not safely pass to the right, until the Kirk could get her tow to the south side of the canal, out of danger.

The requests to charge made by plaintiff's counsel were manifestly for the purpose of having this rule of law properly and clearly presented to the jury. The attention of the court was sufficiently called to the error in the charge already made, for the request to charge was diametrically opposed to the charge as made by the court immediately before. Defendant's sole remedy was not to except to the charge as made. The original charge having been modified by the granting of defendant's request to charge, the particular way in which the charge so modified was desired to be qualified by plaintiff

was sufficiently pointed out by embodying the particular qualification in the request to charge. Even if the court did not intend, by the instructions given at defendant's request, to change the previous charge, which is not free from doubt, yet the jury may well have been confused or misled thereby; and, as plaintiff's request embodied correct propositions of law applicable to a material issue, the jury should have been so informed. The charge was inconsistent and conflicting, and, it being impossible to say whether the jury adopted the correct or the erroneous instructions, the verdict should not be permitted to stand. Black v. Railroad Co., 108 N. Y. 640, 15 N. E. 389; Kankakee Stone & Lime Co. v. City of Kankakee, 128 Ill. 173, 20 N. E. 670; Brown v. McAllister, 39 Cal. 573; Summerlot v. Hamilton, 121 Ind. 87, 22 N. E. 973; Martinowsky v. City of Hannibal, 35 Mo. App. 70.

I think the court's refusal to charge as requested clearly constitutes reversible error. The judgment appealed from should be reversed, and a new trial granted, with costs to appellant to abide the event.