LUCY BOLTE, as Administratrix of the Estate of GUSTAVE BOLTE, Deceased, Respondent, *v.* CITY OF NEW YORK, Appellant-Respondent; BROADWAY MAINTENANCE CORP., Appellant; SAFEWAY STORES, INC., Respondent, et al., Defendant.

First Department, November 9, 1967.

L. *Michael Rudolph* of counsel (*Stanley Buchsbaum* with him on the brief; *J. Lee Rankin, Corporation Counsel*), for appellant-respondent.

*David S. Konheim* of counsel (*Garvin & Gemmelli* and *Konheim & Halpern,* attorneys), for Broadway Maintenance Corp., appellant.

*Abraham Shapiro* of counsel (*Weisman, Celler, Allan, Spett & Sheinberg,* attorneys), for Safeway Stores, Inc., respondent.

*Arthur N. Seiff* of counsel (*Harry H. Lipsig,* attorney), for Lucy Bolte, respondent.

WITMER, J.   Plaintiff's intestate, a pedestrian crossing Webster Avenue at East 183rd Street in The Bronx, was struck and killed by an unknown (hit and run) motorist on the evening of November 2, 1959.   Plaintiff brought this action to recover against the City of New York and the Broadway Maintenance Corp. (Broadway) for negligent maintenance of the traffic signal light at the northwest corner of the intersection, and against Safeway Stores, Inc. (Safeway), which at the time operated a store at said corner of the intersection.   It appears that Broadway was under contract with the City of New York to maintain in proper working order the traffic signal lights in this area.   There was evidence from which a jury could find that Broadway was negligent in the performance of its duty with respect to maintaining the signal light in question.   There was also evidence that trucks of Safeway negligently collided with said signal light from time to time while making deliveries to its store at that corner, resulting in a turning of the light, so that it would become confusing to traffic, both vehicular and pedestrian, as to which way the light was signalling green and which way red.   Upon that evidence the jury rendered a verdict for the plaintiff against Broadway and the city, and against the plaintiff in favor of Safeway.   Because of the statutory limitation in the amount of interest which a municipality may be required to pay, judgment upon the verdict was entered against the city in the sum of $130,737 and against Broadway in the sum of $144,949; and on the city's cross complaint against Broadway, the city was awarded judgment in the sum of $130,737.

The defendants city and Broadway appeal from the plaintiff's respective judgments against them, and Broadway also appeals from so much of the judgment as grants judgment to the city on its cross claim against Broadway and from so much of the

judgment as dismisses Broadway's cross claim against Safeway. The plaintiff has not appealed from the dismissal of the complaint as against Safeway or Motor Vehicle Accident Indemnification Corporation.

The record shows that Webster Avenue is a two-way street running north and south; that 183rd Street runs east and west and crosses Webster Avenue; that there are traffic signal lights at the northwest and southeast corners of the intersection; and that the traffic lights on Webster Avenue for cross streets immediately north and south of 183rd Street operate in unison, all being green at the same time and all changing to red at the same time for traffic thereon. 183rd Street is approximately two hundred feet north of 182nd Street. The witness, Miss Scrimgeour, testified that on the evening in question she was driving northerly on Webster Avenue and came to a stop at 182nd Street because the traffic signal light there was red for her; and that another vehicle going north stopped at her left, also waiting for the light to change. The streets were wet and it was dark. Before the light changed, she saw a man come out of a store at the southeast corner of Webster Avenue and 183rd Street and start to cross Webster Avenue, westerly. At that time the signal light at the southeast corner of the 183rd Street intersection was red for Webster Avenue traffic. The lights then changed to green for Webster Avenue traffic, and Miss Scrimgeour proceeded northerly at a moderate speed, 20 to 25 miles per hour. The vehicle on her left also proceeded, but much faster than Miss Scrimgeour drove. As Miss Scrimgeour approached 183rd Street she heard a screech and a thud; and saw the car ahead of her to her left stop suddenly and then take off fast. The pedestrian she had seen crossing Webster Avenue was found dead about three fourths of the way across the avenue toward the west side and about 30 feet south of the south crosswalk of 183rd Street extended.

The immediate question posed by this appeal is, assuming the defendants city and Broadway were negligent in the maintenance of the traffic signal light at the northwest corner of the intersection, whether the record shows a proximate cause between the negligent condition of the signal light and decedent's death. We have concluded that it does not.

We consider the facts first with respect to the effect the light could have had upon the action of the driver of the vehicle which struck the decedent, and then with respect to the effect the light could have had upon the action of the decedent.

At the time the driver proceeded northerly from 182nd Street when the light turned green for northbound traffic, the light on

his side on Webster Avenue at the southeast corner of 183rd Street was also green for him, only 200 feet away. Unquestionably, he had the right to proceed through the 183rd Street intersection, except for other traffic which was clearing it, if any. There is no evidence of other traffic there, except the pedestrian, now deceased. The latter having begun to cross Webster Avenue when the light at the southeast corner was green for him, had a right to continue on across the avenue in the exercise of due care, and the driver had the duty to yield the right of way to him (Rules and Regulations of City of New York, ch. 26-A, Traffic Regulations, art. 5, § 77; and see Vehicle and Traffic Law, § 1111, subd. [a], par. 1; and 6 Warren's Negligence, § 6.21, p. 417). Under such circumstances whether the light at the northwest corner was red or green would be immaterial. If it were red, of course the driver should have stopped. If it were green, as it should have been, still the driver should have yielded the right of way to plaintiff's intestate.

Next, considering the light in question from the viewpoint of the plaintiff's intestate, the evidence is that he emerged from the store at the southeast corner when the traffic light on that corner was green for him to cross Webster Avenue, and he properly proceeded on that green light to cross Webster Avenue. Before he got across, the traffic lights changed, permitting traffic to move on Webster Avenue. Under such circumstances, as noted above, he had the right to continue across, which apparently he did until he was struck. Upon this record, how can it be said that the condition of the signal light on the northwest corner was material? Assuming that the light was improperly turned, so that when it changed while decedent was part way across the avenue, it would not affect his legal right to proceed. If it seemed to him then to have turned green for him when in fact it had turned red, he could only be induced to continue across as he had the right to do. If it seemed to him then to have turned red for him, which it should have done, he still had the right to continue across. At best for the plaintiff, it may be speculated that had the light shown red for the decedent at that time, he might have hastened his crossing or retraced his steps to the southeast corner, and also might have been more alert to the approach of traffic. But that is pure conjecture, without any evidence of decedent's actual conduct to support it, and unrelated to his rights or obligations at the time; and there being no evidence of the effect of that light on decedent's conduct, it was improper to permit the jury to speculate that the condition of the light had some effect thereon (*Cole* v.

*Swagler,* 308 N. Y. 325, 331; *Taylor* v. *City of Yonkers,* 105 N. Y. 202, 209; PJI 2 :70).

Plaintiff relies upon the case of *Lyons* v. *Provencial,* 19 A D 2d 517, 20 A D 2d 875, affd. 15 N Y 2d 1006, wherein a pedestrian recovered against the appealing defendants herein for injuries he received when struck at this same intersection on November 21, 1959, nearly three weeks after the accident in the case at bar. Such reliance is misplaced, because the *Lyons* case is distinguishable upon its facts. There, because of a defect in the signal light ·(not shown in this case to have been present on November 2, 1959), plaintiff began to cross the street when the light seemed to him to be red for Webster Avenue traffic, whereas to the driver it seemed to be green for such traffic. That is a much different case from the one which we are considering.

We recognize that in the present action, it being one for wrongful death, less evidence is needed to establish a prima facie case than in an action where the injured party survives and can testify (*Noseworthy* v. *City of New York,* 298 N. Y. 76) ; but that rule cannot save a case where causal relation is not established between the alleged negligent conduct and the accident (*Cole* v. *Swagler,* 308 N. Y. 325, 329–331, *supra*).

In view of the foregoing, there is no question of fact with respect to the signal light causing the accident; and it was error to submit that question to the jury. '' Since the evidence as to the circumstances surrounding the happening of the accident which damaged plaintiffs is undisputed, the question as to whether any act or omission of defendants-appellants was a proximate cause thereof was one for the court and not for the jury ''. (*Tsitsera* v. *Hudson Tr. Corp.,* 14 N Y 2d 855, 857; and see, also, *Rivera* v. *City of New York,* 11 N Y 2d 856; and 1 N Y PJI 148.) Thus, we must dismiss the complaint as against the appealing defendants for failure in law to make out a case based on the facts as we find them.

Were we not dismissing the amended complaint as a matter of law we would reverse as against the appealing defendants and grant a new trial on the ground that the court erred in failing to charge the jury as to the contentions of the defendant Broadway as to how the accident occurred and the cause thereof, and in refusing, nevertheless, to give said defendant's request to charge number 2 which contained such contentions (*Buckingham* v. *Donarry Realty Corp.,* 25 A D 2d 722, 724; *Smiraldo* v. *Lashins Constr. Inds.,* 24 A D 2d 740; *Arroyo* v. *Judena Taxi,* 20 A D 2d 888; cf. *Buckley* v. *Westchester Light. Co.,* 93 App. Div. 436, 440, affd. 183 N. Y. 506; and *Wagner* v. *Buffalo & Rochester Tr. Co.,* 59 App. Div. 419, 424, affd. 172 N. Y. 634),

and on the further ground that the verdict was against the weight of the evidence.

The judgment below should, therefore, be reversed on the law and on the facts as to the appealing defendants, the City of New York and the Broadway Maintenance Corp., to dismiss the amended complaint as against them, and to dismiss the cross claim of the City of New York against the Broadway Maintenance Corp., with costs and disbursements to said defendants against the plaintiff; and the judgment should be affirmed with respect to the dismissal of the cross claim of the Broadway Maintenance Corp. against Safeway Stores, Inc., with costs and disbursements to Safeway Stores, Inc., against the Broadway Maintenance Corp.

Capozzoli, J. (dissenting). The questions which are presented by this record are whether the evidence adduced at the trial satisfactorily establishes the negligence of the defendants, city and Broadway, in the maintenance of the traffic signal light at the northwest corner of the intersection and, if they were negligent, whether such negligence can legally be said to be a proximate cause of the accident resulting in the death of the decedent.

As to the negligence of the afore-mentioned defendants, there can be no question. Not only the witnesses, Ricca and Yohai, called by the plaintiff, but also the witness, Miss Scrimgeour, called by the defendant Broadway, are in complete agreement as to the defective condition of the light in question and also as to the approximate length of time that it had been in such condition. As a matter of fact, Miss Scrimgeour was particularly emphatic in her testimony concerning the defective condition of this light and testified, amongst other things, that, although she lived in the neighborhood and operated her automobile in that locality, she was, on occasions, confused by this light and the inference is fully warranted that she was not quite sure as to how she should react to it. At page 188 of the record Miss Scrimgeour testified as follows:

" Q. You said that on occasion it was confusing; is that right? A. Yes.

" Q. And those occasions, were they occasions when you traveled in the same direction that you traveled on this night, namely, in a northerly direction? A. No, actually they were on the occasions when I would come down the street, 183rd Street, and I had to use that light, the northwest corner light; then it was confusing to me."

At page 189 this same witness testified as follows: " Q. Now, when you were driving east on 183rd Street and you were then

confused by the light, being confused, did you give the lights a little more attention as you came along because of your confusion; was your attention then taken away from the pedestrians by that confusion; did you ever have that happen?  *  *  * A. Well, I'd be slower to start. It was a light that you would watch. I knew that neighborhood.''

At page 190:

'' Q. And when you waited, you would be giving this light attention that would bring you to this stop, is that right? A. *Actually I used the pedestrians. If they started to move, then I knew that I had the light. That's the way I worked it out.* [Emphasis supplied.]

'' Q. And you had learned the wisdom of that caution from prior experience with that light, is that right? A. Well, I lived in the neighborhood. We know that light condition.

*  *  *

'' Q. And when you say you knew the condition of that light from living there, I take you knew it for some time before this unfortunate night, is that right? A. It was a condition that occurred often.''

Later, at page 191 Miss Scrimgeour testified: '' Q. Now, whether it refreshes your recollection or not, and with the hope that I don't take advantage of you, does it help you to refresh your recollection, in line with what you yourself indicated before, that the light had been in that condition for some time before the night of this accident?  *  *  *  A. It's not the condition before. *It was a-a chronic condition.''* (Emphasis supplied.)

This same witness, in speaking of this light as it existed at the time of the accident, at page 187 testified:

'' Q. Well, from what you observed about the light when you came back, would you say that a car proceeding north on Webster Avenue from 182nd to 183rd would see the light in the direction that it was supposed to face? A. No. Talking about the northwest light, right?

'' Q. Yes, that's right. A. If a car were coming north, going to the south — going north, no.''

I have purposely refrained from quoting any of the testimony of the plaintiff's witnesses up to this point. I have confined myself to quoting from the testimony of Miss Scrimgeour, the witness for the defendant Broadway, on whom the majority opinion places great reliance. However, one particular bit of testimony given by the witness, Yohai, is of significance. At page 206 this witness testified, without objection, that about 15 or 20 minutes after the accident '' one policeman grabbed his

club and tried to — with his — tried to straighten out the light with his club."

The majority opinion contends that, assuming negligence on the part of these two defendants, there is no evidence to indicate that this negligent condition was a proximate cause of the accident in which decedent met his death.

In the case of *Gramm* v. *State of New York* (28 A D 2d 787, 788) the court quoted, with approval, the following passage of Prosser, Torts (3d ed., § 41, p. 246) : " ' The fact of causation is incapable of mathematical proof * * *. If as a matter of ordinary experience a particular act or omission might be expected, under the circumstances, to produce a particular result, and that result in fact has followed, the conclusion may be permissible that the causal relation exists. Circumstantial evidence or common knowledge may provide a basis from which the causal sequence may be inferred.' "

It is the theory of the majority that the cause of the accident was the negligence of the automobile driver who ran away after the accident. It reasons that, without his intervention, this accident could not have happened. The rule in this connection is clearly set forth in the case of *Foley* v. *State of New York* (265 App. Div. 682, 686) and the following quotation from that case is applicable to the case at bar:

" To relieve the first negligent actor of liability for the injury, it must appear that the intervening cause so entirely supersedes his negligence that it alone, without his negligence contributing thereto in any degree produces the injury. * * *

" If the failure of the red light contributed in any degree to the happening of the accident, then the chain of causation remained unbroken. * * * It is apparent that the absence of the red light not only contributed to the accident that happened, but that it was reasonably foreseeable that some such accident would occur under the situation which was allowed to exist. The mere fact that the acts of the drivers of the cars intervened does not necessarily create a superseding cause, and this is particularly so where the original wrongdoer could have anticipated that the intervening acts might naturally follow the original wrongful act. * * * The mere fact that the State's negligence alone was not enough to produce the injury without the co-operation of the drivers of the cars, does not break the chain of causation or relieve the State from liability. * * * It seems clear that the absence of the red light started a chain of events which culminated in this accident. The acts of the drivers whether negligent or not were concurring causes and the

failure of the red light still remained one of the proximate causes.''

In the case of *Dunham* v. *Village of Canisteo* (303 N. Y. 498, 503, 505–506) there is found the following:

'' If there is evidence from which the negligence of the defendants may be reasonably inferred, the question was properly one for the jury.  \*  \*  \*

'' The question here is whether the defendants' acts or omissions to act substantially contributed to the decedent's death. We stated the applicable rule in *Cornbrooks* v. *Terminal Barber Shops* (282 N. Y. 217, 223, Lewis, J.) : ' It is not enough that the defendant, in an effort to break the chain of causation, should prove that plaintiff's injury *might* have resulted from other possible causes, nor is it required of the plaintiff that he eliminate by his proof all other possible causes. '' \*  \*  \*  It is enough that he shows facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred.'' ' ''

In *Foley* v. *State of New York* (294 N. Y. 275, 280) the court said : '' Nor can we say as matter of law upon this record that the bulb failure was not the proximate cause of the collision which occurred, or that the acts of the claimants constituted contributory negligence. ' Several acts may occur to produce a result, one or more being the proximate cause  \*  \*  \*  When varying inferences are present, a jury question is raised.' ''

It must be borne in mind that we are here dealing with a death action and it is a well-established rule of law that, in such an action, plaintiff is not held to as high a degree of proof of the cause of action as where an injured plaintiff can himself describe the occurrence. (*Noseworthy* v. *City of New York*, 298 N. Y. 76; *Swensson* v. *New York, Albany Desp. Co.*, 309 N. Y. 497; *Eder* v. *Cashin*, 281 App. Div. 456.)

In the case of *Eder* v. *Cashin* (*supra*) the court conceded that the proof of negligence was scant, but it, nevertheless, thought it sufficient to send the case to the jury. At page 458 of its opinion the court said : '' If there is a possible hypothesis on the evidence denying fault to the intestate and permitting an imputation of negligence to the defendant the case is for the jury ''.

The law is well settled that, if the injury is the natural and probable result of the negligence or omission and is of such a character as an ordinary prudent person ought to have foreseen as likely to occur as a result of the negligence, then such negligent act is a proximate cause of the injury. This is so, even

though the person charged with negligence did not foresee the precise injury which did result. Under such conditions the intervention of independent concurrent or intervening forces will not break the causal connection if the intervention of such forces was itself reasonably foreseeable. (*Foley* v. *State of New York*, 265 App. Div. 682, *supra; Foley* v. *State of New York*, 294 N. Y. 275, *supra*; there are decisions from other jurisdictions which have considered the question of defective lights at intersections and are to the same effect; *Johnston* v. *City of East Moline*, 405 Ill. 460; *Campbell* v. *City of Tucson*, 4 Ariz. App. 155; *Vidrine* v. *General Fire & Cas. Co.*, 168 So. 2d 449 [La. App., 3 Cir., 1964].)

While condemning speculation, the majority opinion itself engages in speculation when it seeks to analyze what might have happened if the decedent had done one thing or another and it concludes that, in any event, proximate cause is not shown. But that is pure conjecture, because, as the majority opinion itself sets forth, the decedent " might have hastened his crossing or retraced his steps to the southeast corner, and also might have been more alert to the approach of traffic " if the light was working properly. In any event: " We may not assume or speculate that adequate warning signs would not have been heeded * * * but may assume that had the stop sign been in position Smithart would have observed it and stopped. It is a fair conclusion * * * that ' adequate and proper warning would have resulted in * * * a quicker realization of the dangers ahead ' ". (*Gurevitch* v. *State of New York*, 284 App. Div. 717, 720.)

Paraphrasing the language quoted in the last-cited case, we cannot say, as a matter of law, that properly working traffic lights would not have been heeded, but, on the contrary, we may assume that, had the lights been working properly, both the operator of the automobile and the deceased would have observed them. But all of this, under the circumstances of this case, is not for an appellate court. Questions of fact are presented and: " Only a jury is constitutionally endowed with the right to pass on conflicting evidence, as well as the credibility of witnesses ". (*Swensson* v. *New York Albany Desp. Co.*, *supra*, p. 505.)

The majority argues that the case of *Lyons* v. *Provencial* (19 A D 2d 517, 20 A D 2d 875, affd. 15 N Y 2d 1006) is distinguishable from the case at bar " because of a defect in the signal light (not shown in this case to have been present on November 2, 1959) ". I respectfully disagree with the dis-

tinction attempted to be. drawn by the majority. The *Lyons* case involved the same intersection, the same defective light on the northwest corner and the two victims in the *Lyons* case, one of whom was killed in the accident, were crossing the intersection in the same direction as the decedent in the case at bar. The only distinction which can be drawn is that, in the *Lyons* case, one of the victims lived to tell his story and to furnish the details of the confusion, whereas, in the case at bar, the decedent cannot tell his side of the story. But that is the reason why it has been held numerous times that the proof required in a death action is far less than that required in a case where the injured person may give his version.

It seems to me that there is sufficient evidence from which the jury could properly infer that the acts of these defendants, or their omissions to act, substantially contributed to the happening of this accident.

The majority has also concluded that the trial court erred in failing to charge the jury in accordance with defendant Broadway's request number 2. An examination of the complete charge of the trial court discloses that the court correctly covered all the salient features of the case and the law applicable thereto. The contention of defendant Broadway is not well founded. Its number 2 request to charge was improper and the court below was correct in declining to charge it. The request fails to take into account the fact that the jury could have found that this defective light was a concurrent contributing cause, even if the automobile operator had been negligent. This phase of the case was correctly covered by the trial court in its main charge, see particularly page 325, last paragraph, and continue to last paragraph at the top of page 326.

For the reasons above stated I dissent from the conclusion reached by the majority and vote to affirm the judgment below.

EAGER, J. P., RABIN and McGIVERN, JJ., concur with WITMER, J.; CAPOZZOLI, J., dissents in opinion.

Judgment reversed, on the law and the facts, as to defendants the City of New York and the Broadway Maintenance Corp. to the extent of dismissing the amended complaint as against them, and to dismiss the cross claim of the City of New York against the Broadway Maintenance Corp., with $50 costs and disbursements to said defendants against the plaintiff, and the judgment is affirmed with respect to the dismissal of the cross claim of the Broadway Maintenance Corp. against Safeway Stores, Inc., with $50 costs and disbursements to Safeway Stores, Inc., against the Broadway Maintenance Corp.