Edward J. Greenfield, J.
This application to quash a subpoena pits two government agencies against each other in a clash between commendable but conflicting public policies.
The order to show cause was brought on by Gerald P. Hecht as Director of the New York City Department of Probation, to quash a legislative subpoena for the production of the Family Court probation records of a juvenile issued by the Chairman of the New York State Select Legislative Committee on Crime, Its Causes, Control and Effect on Society (the Marino Committee).
The question of juvenile crime and how to deal with it has been the subject of considerable public attention of late. The Legislature created a select committee and empowered it "to proceed with a comprehensive study and investigation of all aspects and phases of crime * * * with a view to recommending ways and means of combatting same.” (Sen Res 87, May 7, 1974)
*309 For the past three years, the committee has proceeded with its investigation of the conditions prevailing in the juvenile justice system. Some legislative changes have already been made, and there are several bills now before the Legislature looking towards modifications in the way in which juvenile offenders are handled.
With concern mounting over a seeming increase of juvenile crimes against the elderly, the problems of handling juvenile offenders came into sharp public focus with the brutal murder of a frail 84-year-old widow in Co-op City in The Bronx. On January 25, 1977, 1 a.m., a teenager was arrested and charged with the murder. In early February, 1977, the media broke the story that a few months before, he had been adjudicated a juvenile delinquent for having committed forcible rape and committed to the Goshen facility of the Division for Youth.
Why was A.M. no longer in custody and free to commit an even more horrible crime of violence so soon after the earlier one? The Director of the Division for Youth had assured the Senate that it was paying close attention to maintaining dangerous juvenile offenders in secure custody. Public hearings of the committee disclosed that in the supposedly secure Goshen facility, there had been as many escapes as residents. Given these facts, indicating a presumptive failure of the juvenile justice system, the committee seeks to press an inquiry in the facts about A.M.’s background, sentencing, and detention, to determine how such cases should be handled in the future. Accordingly, it served a subpoena on the Department of Probation to obtain the records concerning A.M., and a similar subpoena on the Division for Youth.
In opposing the subpoena, the Department of Probation stresses the confidentiality the law imparts to the records of juvenile proceedings. Section 166 of the Family Court Act provides that: "The records of any proceeding in the family court shall not be open to indiscriminate public inspection. However, the court in its discretion in any case may permit the inspection of any papers or records.” Section 783 of the Family Court Act provides that the fact that a person has been charged with juvenile delinquency in the Family Court shall not be admissible as evidence against him in any other proceeding.
It is not suggested that A.M.’s records are to be used in evidence against him. They are the subject of a proposed inquiry in a legislative hearing. Accessibility to juvenile court *310 records is not barred under all circumstances — those records are to be protected from "indiscriminate” public inspection. The court has the power to permit inspection in an appropriate case. Neither the confidentiality of the juvenile record nor the legislative prerogative is absolute. Section 62-a of the legislative law empowers a legislative committee to issue a subpoena, but it is still for the court to determine whether the information sought is material and relevant to a matter of legitimate legislative inquiry, and whether a case for inspection of otherwise confidential materials has been made.
This court holds that the legislative committee has a right to examine into all matters bearing upon the administration of juvenile justice and the custodial practices of State agencies entrusted with the duty of detaining and caring for those potentially dangerous individuals for whom some restrictions on freedom have been prescribed. The Family Court Act, and the administrative rules of that court and of the Department of Probation (22 NYCRR 2830.9 [Rules for Family Ct Within City of New York]; 9 NYCRR 348.4 [Division of Probation Rules]) providing for the sealing and keeping secure of case records cannot thwart a bona fide legislative investigation. Indeed, the very policy of the confidentiality of such records was created by the Legislature, and may be scrutinized by it to determine if that policy should be retained or modified.
"The same principle which renders it the duty of the courts to hold legislative action illegal when it unduly encroaches upon the province of the judiciary, forbids interference by the latter with the action of legislative bodies or the exercise of their discretion in matters within the range of their constitutional powers.
"The law making power given to the Legislature authorizes it, by inquiry, to ascertain facts which affect public welfare and the affairs of government. Such power of inquiry, with process to enforce it, is an essential auxiliary to the legislative function.” (Matter of Joint Legislative Committee v Teachers Union of City of N. Y., 285 NY 1, 8.)
Whenever the mantle of confidentiality is breached, for overriding considerations of public interest, genuine concern must exist as to whether legitimate use of such records may prejudice the youth in question with respect to his rights to a fair trial free of undue publicity, and his rights to pursue a subsequent career. (See Sheppard v Maxwell, 384 US 333, 362.) The committee must be relied on to protect the rights of *311 the individual while pursuing the interests of society. Much of the mantle of confidentiality of the records has already been tattered by extensive reports in the press and on television, identifying the individual in question and detailing his background. Nevertheless, prudence and circumspection are called for.
The motion to quash the subpoena is denied.