OPINION OF THE COURT
Francis A. Affronti, J.
Claimant, as administratrix and mother of the deceased, Randell L. Manigault, has commenced a wrongful death action against defendant, State of New York, which is currently pending before the New York State Court of Claims. As background, on December 7, 1983, the deceased committed suicide by hanging, while incarcerated at Auburn Correctional Facility where he was serving an adult indeterminate sentence of one and one-half to four years upon a conviction of burglary in the third degree. The wrongful death claim demands substantial damages and alleges negligence by defendant as the cause of death.
Defendant, by notice of motion, now asks this court for an order pursuant to Family Court Act § 166 and other authority, releasing for discovery and inspection certain documents prepared by the Monroe County Probation Department regarding *66 the deceased, while he was a juvenile, including but not limited to predispositional reports, social investigations, diagnostic assessments, and other similar data, including any Monroe County Family Court orders previously rendered against him.
The claimant opposes the above upon various bases, the most significant of which includes this court’s lack of jurisdiction over the application, and further, that any disclosure would disseminate privileged matter, which is immaterial and unnecessary to any trial defense.
Defendant contends that decedent had extensive juvenile contact with Family Court and, as such, the information to be discovered is material and necessary to the defense of the civil action and essential to properly prepare for the upcoming trial. Additionally, defendant argues that among the factors a court may consider in fixing a monetary award for wrongful death are the decedent’s position in life and potential for advancement, his intelligence, skills, prior employment and earning capacity, projected life goals and expectations, his physical and mental health and personal living habits.
The pertinent portion of Family Court Act § 166, as applicable to this motion, reads as follows: "The records of any proceeding in the family court shall not be open to indiscriminate public inspection. However, the court in its discretion in any case may permit the inspection of any papers or records” (emphasis added). Likewise, Family Court Rules, in pertinent part, read as follows: "Any person or agency having a legitimate purpose may for good cause shown and in the discretion of the court, have access to the records of any Family Court proceedings” (22 NYCRR 2501.3 [b]; emphasis added). Obviously, therefore, this court does have requisite jurisdiction in this matter and inherent power over its own records, and may in any case permit their inspection. (See also, Matter of Richard S. v City of New York, 32 NY2d 592; Matter of Smith, 63 Misc 2d 198; and also, People v Hunter, 88 AD2d 321.) Although research has revealed a paucity of legal precedent directly addressing the specific issues herein encountered, guidance is acquired by a review and interpretation of the germane statutes and case law.
As reported in Besharov, Practice Commentary (McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 166, p 118), the phrase " 'shall not be open to indiscriminate public inspection’ [implies that] proper requests for discriminating public *67 inspection cannot be refused, since the court is not specifically given discretion in regard to them but, rather, is given far broader 'discretion in any case (to) permit the inspection of any paper or records’ ” (citing Matter of Hecht, 90 Misc 2d 308). As expounded in Hecht (supra, pp 309-310), "[accessibility to juvenile court records is not barred under all circumstances — those records are to be protected from 'indiscriminate’ public inspection [and the] court has the power to permit inspection in an appropriate case.” The ultimate authority "to determine whether the information sought is material and relevant” (p 310; emphasis added) "and whether a case for inspection of otherwise confidential materials has been made”, lies solely with the court (Matter of Hecht, p 310, supra). Of course, the person or official making the request, the purpose for same, and the possibility that the papers once obtained, may be improperly used or disclosed, must be conscientiously pondered and weighed prior to the disclosure of Family Court records (see, Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 166, p 119).
In Matter of J. Children (101 Misc 2d 479), Family Court permitted the transcription of fact-finding minutes for forwarding to the District Attorney to investigate a potential criminal act. The court reasoned that the intent of Family Court Act § 166 was not "to protect litigants * * * in giving perjured testimony or the making of admissions to the commission of crimes” (p 480). Likewise, this court is mindful of other decisions where juvenile delinquency records have been admitted in evidence at subsequent criminal trials (see, People v Johnson, 90 Misc 2d 777; People v Price, 100 Misc 2d 372).
However, recent precedent has allowed for disclosure of certain records similar to those requested by defendant as they apply to civil litigation or the acquisition of a specific legal remedy in another court. Thus, the limited confidentiality of this court’s records and proceedings is discretionary, and whether or not such privacy is to be maintained shall be addressed as each case is presented. Inspection of Family Court records by parties formerly charged with child neglect under Family Court Act article 10 has also been permitted for purposes of obtaining evidence in furtherance of a malpractice action by them against a physician who testified at the neglect proceeding. (See, Department of Social Servs. v Land, 110 Misc 2d 665.)
In Freeman v Corbin Ave. Bus Co. (60 AD2d 824, 825) involving a wrongful death action paralleling the case at bar, *68 Family Court records and probation reports were found properly admissible in evidence and were "relevant, as in a wrongful death action the jury is 'entitled to know the amount the deceased earned [and] his habits’ ”, among other factors (citing Wilkinson v Boehm, 231 App Div 295). The court further analyzed that "[i]n a wrongful death action, the plaintiff tenders the issue of pecuniary loss sustained by the next of kin [and therefore] 'any proof as to age, sex, health, intelligence, habits, earning capacity, life expectancy and the like, was competent unless prohibited by statute’ ” (60 AD2d, at p 825, citing Eder v Cashin, 281 App Div 456; see also, Zaninovich v American Airlines, 26 AD2d 155). In Freeman, the issue of privilege was raised and settled with the court espousing that although some of the records "may have been privileged, that privilege was waived by the plaintiff bringing this action, thus putting in issue the pecuniary loss suffered by next of kin” (supra, p 825, citing Eder v Cashin, supra; Koump v Smith, 25 NY2d 287). As a corollary, decedent’s administratrix has initiated the current death action and as evoked in Freeman (supra), any privilege of confidentiality which may exist has likewise been waived.
Upon the foregoing analysis and a thorough and comprehensive critique of the available pleadings, records, and proceedings, it is deemed that the defendant has a legitimate purpose in obtaining the records requested. Good cause for their release has been exhibited in that the request is specific, the materials are relevant, material, and evidentiary not otherwise procurable reasonably in advance of trial by the exercise of due diligence, defendant cannot properly prepare for trial without their production and inspection, and the application is made in good faith. Such disclosure would not constitute indiscriminate public inspection since "undue dissemination * * * can be avoided through an appropriate court order” (Matter of J. Children, supra, p 481).
The release of the documents requested is hereby directed and the attorneys are to maintain them in utmost confidence and not cause their review or removal by or to anyone not privy to the instant litigation. The documents shall be utilized solely for the purpose of defending the wrongful death action. The Monroe County Family Court and Monroe County Probation Department are authorized to provide those juvenile records and reports of the deceased, presently on file, to the defendant, upon presentation of a signed order, who shall *69 return same immediately upon completion of the aforementioned trial.
Upon the foregoing, the defendant’s motion is granted in its entirety and claimant’s cross motion for a protective order is denied.