DURINDA HUGHSON, an Infant, by WILLIAM HUGHSON, Her Father and Natural Guardian, Respondent, v ST. FRANCIS HOSPITAL OF PORT JERVIS et al., Appellants.

Second Department, May 16, 1983

APPEARANCES OF COUNSEL

*Morris, Duffy, Ivone & Jensen* (*Edwin H. Knauer* of counsel), for St. Francis Hospital of Port Jervis, appellant.

*Meiselman, Farber, Stella & Eberz, P. C.* (*Myra I. Packman* of counsel), for Stanley Brunn and another, appellants.

*Pegalis & Wachsman, P. C.* (*Roger K. Solymosy* of counsel), for respondent.

NIEHOFF, J.

This is a medical malpractice action brought to recover for personal injuries allegedly sustained by the infant plaintiff, Durinda Hughson, as a result of the claimed medical malpractice of the defendants in rendering negligent prenatal and delivery care to Blanche A. Hughson, the infant plaintiff's mother. The suit was instituted on behalf of the infant plaintiff by her father, William Hughson. The infant's mother is not a party to the action.

The appeals presently before us are from an order of Special Term which denied a motion for "an order compelling plaintiff William Hughson and non-party witness Blanche A. Hughson to submit to further examinations before trial and to provide the medical authorizations demanded".

Although the motion was addressed to obtaining medical authorizations from the mother and further examinations before trial of the father as well as the mother, defendants' briefs on appeal limit the appeals to the matters of a further examination before trial of the mother and the medical authorizations.

In brief, defendants seek to depose the infant plaintiff's mother regarding her medical history both prior to and subsequent to the birth of the infant plaintiff and to obtain medical authorizations in connection therewith. The infant plaintiff resists the relief sought upon the ground that "confidential information concerning the medical history of a non-party to the action is privileged and immuned from disclosure".

Special Term denied the motion stating in part: "The medical information sought may be relevant but it is also privileged (*Burgos v Flower & Fifth Ave. Hosp.*, 108 Misc 2d 225)."

■ For reasons stated below we modify the order of Special Term (1) by reversing so much thereof as denied defendants' request for a further examination before trial of the infant plaintiff's mother as to her prior medical history and for authorizations for her prior medical history and (2) by affirming so much of the order as denied defen-

dants' request for medical records and testimony concerning a later born child.

Essentially, the complaint alleges that because of negligent acts and/or omissions occurring before delivery, during delivery and post delivery, the infant plaintiff suffered severe central nervous system injury manifesting itself in retardation, cerebral palsy, brain injury, quadraperesis and neurologic deficit.

The description of the acts constituting the alleged malpractice set forth in the plaintiff's bills of particulars covers almost seven full typewritten pages and sets forth numerous acts of malpractice directed at the mother, Blanche A. Hughson. Insofar as pertinent to the question before us the bills recite that the defendants were: "careless and negligent in failing to diagnose, evaluate, appreciate and correlate the significance of the maternal past history * * * and carelessly and negligently failing to have, take and obtain a full, proper and informative history and record such carefully, carefully [sic], neatly and accurately contemporaneously with receipt of the information; carelessly and negligently failed to appropriate [sic] take and record the patient's chief complaints, history, family history, social history, medical history, history of allergies and a careful, complete review of systems * * * carelessly and negligently failed to read and review past and then current medical and hospital records so as to be cognizant and aware of the patient's condition and progress".

Thus, it is abundantly clear from the infant plaintiff's own bill of particulars that she has put in issue the alleged failure of the defendants to diagnose, evaluate, appreciate and correlate the significance of the mother's past physical condition, medical history and family history. Therefore, Special Term correctly held that the medical information relating to the medical history of the mother which was sought by defendants was relevant.

However, in our judgment Special Term erred when it held that *all* of the medical information sought was privileged. Some of it was not privileged, and the mother may properly be called upon to disclose such nonprivileged information. With respect to so much of such information

as is cloaked with the privilege, we hold that the mother should either disclose such privileged, relevant information at this juncture or be precluded from revealing it at the trial.

We turn now to a review of the manner in which this controversy arose and an analysis of the parties' respective contentions.

Pursuant to court order, examinations before trial of William Hughson, the father, and Blanche A. Hughson, the mother, were held on July 27, 1981. During the course of the deposition of Blanche A. Hughson, plaintiff's counsel appeared as her attorney, interposed objections to certain questions and directed her not to answer a number of questions concerning her medical history and employment. The examination concerned itself with the manner of birth of the infant plaintiff; the mother's personal medical history for a period preceding the birth of the infant plaintiff's brothers and sisters; the mother's employment and earnings records; and the father's employment history and earnings and expense records. The objections as to certain of the medically related questions were premised upon the grounds that the medical history of Blanche A. Hughson, testifying as a nonparty witness, was privileged. During the examination before trial, defense counsel requested medical and hospital authorizations in order to obtain the delivery records and the pregnancy charts for each of her four pregnancies; and the birth charts of each of the four Hughson children, two of whom were adopted by William Hughson after his marriage to Blanche A. Hughson. The requests were refused.

Thereafter, defendants Brunn and Weiner brought on a motion to compel William Hughson and Blanche A. Hughson to submit to further examinations before trial as to the above issues and to provide the medical authorizations to them for all pregnancies, both prior to and after the birth of the infant plaintiff Durinda Hughson. In addition, defendants Brunn and Weiner sought discovery in the form of information about the educational and economic status of the infant plaintiff's siblings and other family members. Defendant St. Francis Hospital joined in that application. The plaintiff opposed the application and cross-moved for

an order compelling defendants Brunn and Weiner to appear for their examinations before trial. Special Term denied the motion and cross motion. In denying defendants' motion Special Term declared that while the medical information sought might be relevant, it was also privileged. These appeals ensued. On appeal, the defendants make no claim with respect to the educational and economic status of the Hughson family.

■ Initially, we note that no appeal as of right lies from an order on an application to review objections raised at an examination before trial (*Aronofsky v Marine Park Chiropractic Center,* 81 AD2d 570; *Siegal v Arnao,* 61 AD2d 812; *Ithier v Solomon,* 59 AD2d 935; *Lacerenza v Rich,* 39 AD2d 716). However that may be, in view of the novelty and significance of the issues raised in this case involving important principles of privilege, we elect to treat the defendants-appellants' briefs as applications for leave to appeal pursuant to CPLR 5701 (subd [c]), and hereby grant permission pursuant to that statute.

Turning to the merits of these appeals, we see that, in essence, defendants claim that as a result of this lawsuit, the physical condition, medical history and family history of Blanche A. Hughson have been affirmatively put in issue by plaintiff. Defendants maintain that although the action is brought by the father on behalf of the infant plaintiff, it is the care given to the mother as well as her genetic and physical history that is really in question. Consequently, defendants argue that Blanche A. Hughson should be compelled to testify at her deposition as to her entire medical history and that all medical records and records of all hospitalizations for any reason, including pregnancies prior to or subsequent to that of the infant plaintiff Durinda Hughson, are material and necessary for the defense of this action. Defendants assert that such evidence is discoverable in this case because any physician-patient privilege was waived when the action was begun on Durinda Hughson's behalf. Finally, defendants urge that they should not be foreclosed in their examination into areas such as the family's genetic history or any complications surrounding other pregnancies just because the mother is not named as a plaintiff since such a foreclo-

sure would result in an undue advantage to plaintiff. It was to that end that defendants sought a further examination before trial of the plaintiff's parents and the medical authorizations pertaining, *inter alia,* to the births of the other Hughson children.

Plaintiff counters with the argument that the medical history of a nonparty to the action is privileged and immune from disclosure. Thus, plaintiff contends that the statutory physician-patient privilege prevents further discovery in the avenues sought by defendants, to wit: pregnancies occurring before and after that of the infant plaintiff and past hospitalizations of the mother Blanche A. Hughson.

Plaintiff maintains that Blanche A. Hughson has fully complied with any disclosure requirements on her part by voluntarily answering questions relating to the period of time during which she was pregnant with Durinda and that any further medical history is not subject to disclosure. In her brief, plaintiff capsulizes her argument in these words: "Mrs. Hughson, a non-party to the action, voluntarily waived her physician/patient privilege solely with respect to the period while the infant plaintiff was in utero, by virtue of her voluntary testimony at the pretrial deposition about her medical care during this period. She did, however, through counsel, assert and preserve her medical privilege concerning other unrelated medical treatment. She also declined to waive the statutory privilege afforded to her other children."

Turning, then, to the facts of this case we must decide (1) whether the disclosure sought from the mother of the infant plaintiff is protected by the physician-patient privilege and, if so, (2) whether in some fashion the patient, Blanche A. Hughson, has waived her physician-patient privilege vis-à-vis her medical history and family history and, if not (3) whether, under the peculiar circumstances of this case she should be compelled to surrender up the privilege.

At common law, communications made by a patient to his physician for the purpose of receiving medical treatment, even though made in strictest confidence, were not

privileged (see *Matter of Warrington,* 303 NY 129). The physician-patient privilege which was introduced in this State in 1828 (2 Rev Stats of NY [1828 ed], part III, ch VII, tit III, art 8, § 73, p 406) is predicated upon the assumption that the possibility of embarrassment or disgrace that may result from disclosure will deter individuals from securing medical advice and treatment (see *Steinberg v New York Life Ins. Co.,* 263 NY 45; *Nelson v Village of Oneida,* 156 NY 219). Such protection against disclosure is deemed essential to the physician-patient relationship for "[t]o open the door to the disclosure of secrets revealed on the sick bed, or when consulting a physician, would destroy confidence between the physician and the patient, and, it is easy to see, might tend very much to prevent the advantages and benefits which flow from this confidential relationship" (*Edington v Mutual Life Ins. Co. of N. Y.,* 67 NY 185, 194).

The physician-patient privilege is presently found in CPLR 4504. "§ 4504. Physician, dentist and nurse. (a) Confidential information privileged. Unless the patient waives the privilege, a person authorized to practice medicine, registered professional nursing, licensed practical nursing, or dentistry shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity. The relationship of a physician and patient shall exist between a medical corporation, as defined in article forty-four of the public health law, a professional service corporation organized under article fifteen of the business corporation law to practice medicine, and the patients to whom they respectively render professional medical services."

It should be noted that by its terms CPLR 4504 only prohibits the physician, dentist or nurse from disclosing information acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity, unless the patient waives the privilege. Thus, one may easily be misled into concluding that the privilege does not protect the patient himself against being compelled to testify as to such confidential information but only prevents the professional from testifying,

unless there has been a waiver. However, upon thoughtful reflection it becomes crystal clear that the privilege does more than act as a restraint upon the professional who treated or cared for the patient.

Manifestly, the privilege, which is designed to make the information imparted to the professional nondiscoverable, would be of negligible value if the patient could simply be compelled to disclose that which he had communicated in confidence. Indeed, it would not be an overstatement to say that if the patient could be directed against his will to reveal the confidences passed on to the professional treating him, the salutary purpose behind the privilege would be frustrated. So it is that it has long been held that the testimony of the patient as well as that of the physician is protected (see *Galligano v Galligano,* 245 App Div 743; Fisch, NY Evidence [2d ed], § 542).

What is more, the privilege is not limited to trials but applies also to examinations before trial (see *Hughes v Kackas,* 3 AD2d 402), proceedings before a referee (*Woernley v Electromatic Typewriters,* 271 NY 228) and to Grand Jury (*People v Eckert,* 2 NY2d 126) and legislative proceedings (*Matter of City Council of City of N. Y. v Goldwater,* 284 NY 296).

The protection afforded by the statute runs to communications between physician and patient and covers information acquired while the physician was attending the patient in a professional capacity and which information is necessary to enable the physician to act in that capacity. The general test of what constitutes "information" includes "not only communications received from the lips of the patient but such knowledge as may be acquired from the patient himself, from the statement of others who may surround him at the time, or from observation of his appearance and symptoms" (*Edington v Mutual Life Ins. Co. of N. Y.,* 67 NY 185, 194, *supra*). On the other hand, the privilege "is not intended to prohibit a person from testifying to such ordinary incidents and facts as are plain to the observation of any one without expert or professional knowledge" (*Klein v Prudential Ins. Co. of Amer.,* 221 NY 449, 453; see, also, *People v Newman,* 32 NY2d 379; Richardson, Evidence [Prince, 10th ed], § 432). Therefore, both

the physician and patient may be called upon to testify as to such matters if the testimony is otherwise admissible.

Thus, a physician is not prohibited by the privilege from testifying that an individual "was the patient of the doctor; that he attended him as a patient * * * how many times he attended him, whether daily or hourly," and "that [the patient] was sick" (*Patten v United Life & Acc. Ins. Assn.*, 133 NY 450, 453), provided that such condition of sickness was plainly observable by anyone (*Lande v Travelers Ins. Co.*, 241 App Div 96, affd 265 NY 655); that the patient visited him and made certain payments to him (*Zilboorg v Zilboorg*, 131 NYS2d 122, affd 283 App Div 942); and that he referred the patient to a certain attorney (*Matter of Judicial Inquiry Pursuant to Order of Appellate Div., 2nd Dept. [Anonymous "P" — Hurley]*, 8 AD2d 842). However, the physician may not be asked questions that are obviously designed to elicit the "character of the disease or ailment for which the [patient] was being treated" (*Lorde v Guardian Life Ins. Co. of Amer.*, 252 App Div 646, 649).

To state the matter conversely, the privilege extends to that which falls within the ambit of information relating to the nature of the treatment rendered and the diagnosis made (see *Palmer v John Hancock Mut. Life Ins. Co. of Boston*, 150 Misc 669).

In the case at bar the record reveals that during the examination before trial of Blanche A. Hughson, defense counsel was virtually foreclosed from asking the witness any questions regarding her medical history previous to the time she was pregnant with Durinda. For example, such questions as whether the witness was hospitalized or saw any doctors from 1965 to 1975 were objected to and went unanswered. Questions such as those designed to elicit information as to whether the patient had been previously treated at a hospital or by doctors and, if so, the dates thereof, are not protected by the physician-patient privilege, and should be answered, as long as such questions are not disguised attempts to elicit the nature of the disease or condition for which she was treated. Hence, we hold that the witness, Blanche A. Hughson must, upon her continued examination before trial, testify as to such and any other unprotected matters.

We recognize that the defendants will not be satisfied with the limited inquiry thus afforded them and that on the continued examination before trial they will seek, as they did on the prior examination before trial, to delve more deeply into the witness' medical history thereby intruding into areas which are protected by the physician-patient privilege. They will also seek to examine hospital records which are privileged. Consequently, we must determine if the witness, Blanche A. Hughson, has, on the record before us, waived her privilege.

Although the courts recognize that the physician-patient privilege is one deserving of considerable respect, when it comes to the matter of waiver the cases reveal that over the years there has been a tendency towards relaxation of the privilege. Where once the statute spoke of express waiver (Civ Prac Act, § 354), such language has been eliminated, and even when such language was in the statute, the courts implied waiver from conduct (see *Eder v Cashin,* 281 App Div 456).

Waiver occurs when the patient personally, or through his witnesses, either lay or medical, introduces testimony or documents concerning privileged information, or when the legal representative of a deceased patient presents such evidence. It also results from failure to object to disclosure of privileged information. Almost invariably, waiver occurs in personal injury and wrongful death actions or compensation claims inasmuch as the prosecution of such litigation necessarily involves proof of injuries on behalf of the plaintiff.

However, it is clear that in this case, the patient has not waived the privilege. *She* is not a party to this lawsuit, and *she* has not put in issue her physical condition, medical history or family history. At the examination before trial she waived her physician-patient privilege solely with respect to the period while the infant plaintiff was *in utero.* But, she steadfastly asserted her privilege as to medical care at any other time and counsel, on her behalf, consistently objected to questions that dealt with other periods of time.

Nevertheless, judging from the plain language of the bills of particulars, quoted earlier, there is very good

reason to believe that because of the special relationship existing between the infant plaintiff and her mother, the infant has acquired privileged information as to the mother's prior medical history and family history which she intends to use against the defendants in proving her claim of medical malpractice. There is certainly a sound basis for suspecting that upon the trial of the action, the mother, or someone who has treated her, will be called to the stand to unveil such confidential medical information pursuant to a waiver then granted by the patient. If that should occur, plaintiff, by means of a trial strategem, will have been allowed to take unfair advantage of defendants. The strategy would appear to be to hold back this vital information until it is "sprung" on the defendants during the trial, thereby depriving defendants of an adequate opportunity to make a careful or thorough evaluation of it.

In this State the trend of the law is towards liberal disclosure premised upon the assumption that such an approach advances the truth. What plaintiff seems to have in mind flies in the face of the law's desire to search for the truth. If the patient is prepared to waive her privilege at the trial thereby uncovering the confidential medical information, as seems likely from the bills of particulars, why should she not waive it now, unless her objective is to gain a strategic advantage for plaintiff by delaying the time of the waiver? In our judgment, this "cat and mouse" approach to disclosure should not be encouraged or countenanced.

Of course, we cannot overlook or ignore the significance of the physician-patient privilege and we do not believe that the courts should be quick to order a patient to relinquish that privilege where she shows a genuine desire to insist on it and she has not waived it. At the same time, we are unwilling to permit the privilege to be utilized or manipulated in such a way that one party will be enabled to obtain that which we deem to be an unjust benefit.

While it appears that we are presented with something of a dilemma because of these conflicting considerations, in our search for justice we are called upon to cut this Gordian knot and we are of the view that we can do so and achieve an equitable result in the following manner: the patient

(mother) will be directed to appear and submit to a further examination before trial and be directed to submit medical authorizations. At her continued examination before trial she shall testify as to any relevant unprotected evidence which she possesses. With respect to information which is protected by the physician-patient privilege the patient will be permitted to claim her privilege if she be of such a mind, and once again she will be permitted to refuse to execute the authorizations on the ground of privilege. If she avails herself of the privilege, the plaintiff will be precluded at the trial from introducing any evidence of such privileged information through the mother, or the mother's physicians, or the mother's medical history or physical condition, or family history, for any period other than when the infant plaintiff was *in utero*. (See *Greenberg v CBS Inc.*, 69 AD2d 693, 708-709.)

The foregoing solution produces what we perceive to be an eminently just resolution of the knotty problem before us. If plaintiff's mother is truly serious about her privilege she may demonstrate her sincerity by reasserting it and the courts will not deprive her of it. On the other hand, if her plan is to insist on the privilege now, but waive it at the trial, she will be denied that prerogative and both she and the plaintiff will have to remain thunderously silent at the trial with respect to any privileged matter pertaining to her medical condition and history and family history relating to any period of time encompassed within the claimed privilege. The defendants, on their part, will be entitled to obtain the information they require to prepare for trial in the event that a waiver at trial time was contemplated. If not, they will have the assurance that nothing in the mother's medical condition or history or family history covered by the privilege will be used to make out a case of malpractice against them.

The directions we speak of above are limited to the mother's physical condition, medical history and family history, for the period preceding or prior to the infant plaintiff's birth. Defendants' demands for medical records and testimony concerning the mother's later born child are totally irrelevant to plaintiff's claims of malpractice at the time of her birth. That latter pregnancy had nothing to do

with the mother's medical history and physical condition at the time of the infant plaintiff's birth and, so, the mother need not comply with such demands.

Accordingly, if plaintiff intends to introduce evidence of the prenatal and natal medical records of those children born to her mother prior to the time her mother gave birth to the plaintiff or of any other hospitalizations she may have had prior to the plaintiff's birth, plaintiff's mother shall execute and deliver to defendants' counsel authorizations with respect thereto, within 30 days after service upon the mother of a copy of the order to be made hereon, with notice of entry. If the mother asserts her physician-patient privilege with respect to said authorizations and declines to sign them, plaintiff will be precluded at the trial from introducing such records into evidence or otherwise using them at the trial.

Plaintiff's mother is directed to submit to a further examination before trial at a time and place to be fixed in a written notice of not less than 10 days to be given by defendants to plaintiff's mother or at such time and place as the parties may agree. At the examination, the mother shall answer all pertinent questions pertaining to her physical condition, medical history, and family history prior to the time she gave birth to the infant plaintiff. As noted above, the mother will be entitled to decline to testify as to privileged matter at her continued examination before trial. In the event the mother exercises her privilege and the parties have a dispute as to whether material covered by a particular question is privileged, they should seek a ruling from a Special Term Judge. As stated above, if the mother does assert her physician-patient privilege with respect to questions covering the foregoing subjects, plaintiff will be precluded at the trial from calling her mother, or her mother's physicians on such subjects.

TITONE, J. P., GIBBONS and THOMPSON, JJ., concur.

Order modified by deleting the provision denying the defendants' motion in its entirety and the motion is denied only as to defendants' request for medical records and testimony concerning a later born child and said motion is otherwise granted to the extent indicated herein. As so

modified, order affirmed insofar as appealed from, without costs or disbursements. Within 30 days after service upon the plaintiff's mother of a copy of the order to be made hereon, with notice of entry, she shall execute the authorizations in question, in accordance herewith. Moreover, the plaintiff's mother shall submit to a further examination before trial, in accordance herewith, at a time and place to be fixed in a written notice of not less than 10 days, to be given by the defendants to plaintiff's mother, or at such time and place as the parties may agree.