■ TROY HERBST, an Infant, by His Mother and Natural Guardian, FRAN HERBST, Respondent, v DONALD F. BRUHN et al., Appellants. — In an action to recover damages for medical malpractice, defendants appeal, as limited by their briefs, from so much of an order of the Supreme Court, Suffolk County (Gerard, J.), dated April 26, 1983, as, upon reargument, adhered to its original determination granting plaintiff a protective order and modified that determination only to the extent of permitting defendants access to the medical records of the infant plaintiff's mother while the infant was *in utero.*

Order affirmed insofar as appealed from, without prejudice to a new demand for medical authorizations, with one bill of costs payable jointly by appellants appearing separately and filing separate briefs.

On March 30, 1974, Fran Herbst, then pregnant, was admitted to defendant St. Charles Hospital, under the care of defendants Drs. Collier and Bruhn. At that time, she was four days past the estimated date of delivery of her child. In the early afternoon of the same day, a seven-pound, seven-ounce boy, the infant plaintiff, Troy Herbst, was delivered by Cesarean section as a result of a diagnosis of cephalopelvic disproportion.

This medical malpractice action was subsequently instituted by Fran Herbst, on her infant son's behalf, against the defendant hospital, obstetricians Collier and Bruhn and pediatrician Dvorken. It is alleged that, as a result of various departures in prenatal, intranatal and postnatal care during March and April, 1974, the infant plaintiff, *inter alia,* sustained injuries to his central nervous system manifested by a "[l]earning disability with specific language impairment".

In the course of pretrial discovery proceedings, defendants were furnished with a copy of a neuropsychological evaluation of the infant plaintiff. That document, authored by neuropsychologist Stuart Rothman, notes in pertinent part that: "[t]he family history is interesting for the mother's admission of her own learning problems during the early grades. Additionally, a maternal uncle showed similar learning difficulties". On the basis

of this neuropsychological report and responses to questions propounded at the deposition of Mrs. Herbst, and in view of the possibility of the existence of a genetic basis for plaintiff's alleged learning disability, defendants sought disclosure of certain of the medical records of plaintiff's mother, Fran Herbst. Specifically, Mrs. Herbst was deposed by defendants on October 18, 1982. Thereafter, by notice dated November 17, 1982, defendant physicians demanded authorizations to obtain the records of hospitals, physicians and a pharmacy pertaining to medical care and treatment rendered Fran Herbst. By way of response, plaintiff moved to strike the demand. Defendant hospital joined defendant physicians in their opposition to the motion to strike and in their request for the production of the authorizations demanded.

By order dated January 26, 1983, Special Term (Gerard, J.), *inter alia,* granted plaintiff's motion for an order striking the demand for medical authorizations. Upon reargument, the court modified its prior order only to the extent of permitting defendants discovery of Fran Herbst's medical records during the period that the infant plaintiff was *in utero*. We affirm.

Essentially, two relevant issues are presented for our consideration on this appeal. First, whether Fran Herbst, named in this action merely in her capacity as mother and natural guardian, by responding to counsel's inquiries at her deposition, waived the physician-patient privilege as to those of her medical records sought by the demand, even though such records were for periods outside of the time period when the infant plaintiff was *in utero*. Second, if the response to the afore-mentioned question is in the affirmative, we must determine whether defendants sufficiently established at Special Term that the medical records sought constitute material and necessary evidence bearing on the claim of the infant plaintiff and are thus discoverable under CPLR 3101.

In a decision published earlier this year, *Scharlack v Richmond Mem. Hosp.* (102 AD2d 886), this court considered and rejected the contention that a plaintiff who sues only in her representative capacity as mother and natural guardian of an infant thereby places her own medical history in issue and waives her physician-patient privilege. As we stated in *Scharlack* (supra, p 888), "[a] representative plaintiff * * * is not comparable to a party who has brought a personal injury or medical malpractice action on his own behalf and who is, thus, deemed to have waived the physician-patient privilege with respect to his own medical history and records by placing his physical and mental condition directly in issue in the litigation (see *Hoenig v Westphal,* 52 NY2d 605; *Pizzo v Bunora,* 89 AD2d

1013; *Cynthia B. v New Rochelle Hosp. Med. Center,* 86 AD2d 256, 260, affd 60 NY2d 452; *Dale v Sherman,* 75 AD2d 612)". Accordingly, in the present case, Mrs. Herbst did not waive the physician-patient privilege with respect to her own medical history merely by acting in a representative capacity for the purposes of litigation in which her infant son is the real party in interest. Of course, Special Term properly determined, and plaintiff concedes, maternal records pertaining to the period when the infant plaintiff was *in utero* are discoverable based upon the theory of impossibility of severance (see *Scharlack v Richmond Mem. Hosp., supra,* p 888; *Burgos v Flower & Fifth Ave. Hosp.,* 108 Misc 2d 225, 226; see, also, *Hughson v St. Francis Hosp.,* 93 AD2d 491, 500).

Defendants argue, however, that Mrs. Herbst voluntarily waived the privilege by responding to questions relating to her medical history at an examination before trial. We agree. In *Hughson v St. Francis Hosp. (supra,* p 500), our respected colleague Justice Niehoff concluded that waiver of the physician-patient privilege "occurs when the patient personally, or through his witnesses, either lay or medical, introduces testimony or documents concerning privileged information * * * It also result[s] from failure to object to disclosure of privileged information". More recently, in the *Scharlack* case, this court held that plaintiff's mother, and nominal representative for the purpose of her retarded son's medical malpractice action, "waived her right to assert the physician-patient privilege with respect to the records relating to her [infant] daughter, Sandra, who also suffers from mental retardation and cerebral palsy, when she answered questions concerning Sandra's condition at an examination before trial and * * * offered to provide defendants with the medical records concerning the diagnosis of that condition" (*Scharlack v Richmond Mem. Hosp., supra,* p 888). Neither *Hughson* nor *Scharlack* may be read as contrary to the 1957 opinion of the Appellate Division, Third Department, in *Hughes v Kackas* (3 AD2d 402), which enunciated the requirement of an express waiver of the physician-patient privilege. At the time the latter case was decided, the former Civil Practice Act specifically required an express waiver of the privilege, for example, in open court upon trial or by way of stipulation (see former Civ Prac Act, § 354; *Hughes v Kackas, supra,* p 403). However, no such mandate exists today (see CPLR 4504). The absence of a requirement that waiver of the privilege be express "indicates a strong trend away from any strict limitation on waiver. As the Advisory Committee indicated, 'the New York policy on this point has changed' [Second Preliminary Report, 1958, Advisory Committee on Practice and Procedure, p 93].

Some of the tortured reasoning necessary to avoid former limitations on waiver may now be avoided" (5 Weinstein-Korn-Miller, NY Civ Prac, par 4504.14). *Hughson* and *Scharlack* are merely reflective of such trend. Accordingly, we reaffirm the rule established in *Hughson* and *Scharlack*, and find that Mrs. Herbst, by responding to questions concerning her medical history upon oral deposition, waived the right to assert the physician-patient privilege with respect to the medical record sought (*Scharlack v Richmond Mem. Hosp., supra,* p 888).

Nevertheless, it is axiomatic that merely because Mrs. Herbst waived her privilege, defendants are not automatically entitled to disclosure of her medical records. As this court has recently stated: "CPLR 3101 (subd [a]) provides for the full disclosure of all evidence which is material and necessary in the prosecution or defense of an action. The statute has been construed to require the disclosure of 'any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason' (*Allen v Crowell-Collier Pub. Co.,* 21 NY2d 403, 406). While the scope and supervision of disclosure is generally a matter within the sound discretion of the court in which the action is pending (*Jackson v Nelson,* 81 AD2d 677, 678; *Borden v Ellis Hosp.,* 67 AD2d 1038), such discretion is not, however, unlimited (*Allen v Crowell-Collier Pub. Co., supra;* see 7 Weinstein-Korn-Miller, NY Civ Prac, par 5501.22; Durst, Fuchsberg & Kleiner, Modern NY Discovery, § 17.3)" (*Conway v Bayley Seton Hosp.,* 104 AD2d 1018).

While the burden of establishing that the material sought to be discovered is privileged falls upon the party opposing disclosure (*Koump v Smith,* 25 NY2d 287, 294), it is incumbent on the party seeking disclosure (here, defendants) to demonstrate that the method of discovery sought will result in the disclosure of relevant evidence or is reasonably calculated to lead to the discovery of information bearing on the defense of the claims prosecuted by the infant plaintiff (see Siegel, NY Prac, § 345; CPLR 3101, subd [a]; *Allen v Crowell-Collier Pub. Co.,* 21 NY2d 403, 406-407). Further, an attorney's affidavit in support of disclosure containing bare unsubstantiated conclusory statements as to relevance is insufficient to establish a factual predicate for the disclosure of the medical records of a nonparty whose personal physical condition is not in issue (cf. *Koump v Smith, supra; Vohs v Long Is. Jewish Hosp.,* 89 Misc 2d 347).

The demand at bar seeks authorizations for medical records pertaining to Mrs. Herbst from at least one hospital, a pharmacy and five physicians. Among other things, Mrs. Herbst did testify at her deposition with respect to her treatment by various physicians and the medications prescribed. However, based

upon our review of the record before Special Term and considering the particular circumstances of the case, it must be concluded that the affidavits of defendants' counsel insufficiently demonstrated the relevancy of each particular record sought to the defense of the claims asserted by the infant plaintiff (see CPLR 3101, subd [a]).

Accordingly, in view of defendants' failure to adequately demonstrate the relevance of each item sought to the issue in controversy, the entire demand for medical authorizations was properly stricken (see *Conway v Bayley Seton Hosp.*, 104 AD2d 1018, *supra*). Such vacatur should be without prejudice to a new demand for authorizations. Lazer, J. P., O'Connor, Rubin and Boyers, JJ., concur.