■ LINDA RICCARDI et al., Respondents, v TAMPAX, INC., Appellant.—In an action to recover damages for personal injuries, etc., defendant appeals from an order of the Supreme Court, Nassau County (Brucia, J.), dated June 19, 1984, which granted plaintiffs' motion for a protective order.

Order reversed, with costs, motion denied, and matter remitted to the Supreme Court, Nassau County, for further proceedings consistent herewith.

In this personal injury action, plaintiff Linda Riccardi alleges that she contracted toxic shock syndrome as a result of using tampons manufactured by defendant. In response to questions posed by defendant's counsel at an examination before trial, Mrs. Riccardi testified, without objection, that several days prior to the onset of her illness, her infant son was treated for a severe skin inflammation which was described by his pediatricians as a staphylococcal infection. Mrs. Riccardi testified that the doctors prescribed medication and, in addition, directed her to wash the inflamed area of her son's skin with Betadine. When she became ill, she went to see her family physician on October 3, 1980 and was informed by him that she had probably contracted her son's disease.

Subsequent to the examination before trial, defendant served the pediatricians who had treated plaintiffs' son with

notices of deposition and demands to produce records pertaining to plaintiffs' son's illness and treatment. Plaintiffs moved pursuant to CPLR 3103 for a protective order quashing the foregoing notices and demands, upon the ground that such information was covered by the physician-patient privilege. In opposition to the motion, defendant argued that there was an issue as to whether Mrs. Riccardi had suffered from toxic shock syndrome at all, or whether she had contracted staphylococcal scalded skin syndrome from her son. Defendant provided the court with a series of medical journal articles which purportedly established that the two conditions were virtually identical with respect to their clinical manifestations. Thus, defendant argued that it was entitled to discovery regarding the diagnosis and treatment of the son's illness, and that assertion of the physician-patient privilege would unjustly deprive it of information material and necessary to the defense of the action. Special Term granted the motion, holding that the child's physician-patient privilege had not been waived. We now reverse and deny the motion.

The physician-patient privilege prohibits, in the absence of a waiver by the patient, disclosure by a physician of information acquired in attending a patient in a professional capacity, and which was necessary to enable the physician to act in that capacity (CPLR 4504 [a]). We have held that "[w]aiver occurs when the patient personally, or through his witnesses, either lay or medical, introduces testimony or documents concerning privileged information, or when the legal representative of a deceased patient presents such evidence. It also results from failure to object to disclosure of privileged information" (*Hughson v St. Francis Hosp.*, 93 AD2d 491, 500; *see also, Herbst v Bruhn*, 106 AD2d 546, 548; *Scharlack v Richmond Mem. Hosp.*, 102 AD2d 886, 888). We have also held that a parent may waive the physician-patient privilege with respect to nonparty minor children by affirmatively indicating an intention to do so (*Scharlack v Richmond Mem. Hosp., supra*, at p 888). Thus, when Mrs. Riccardi responded to questions at the examination before trial regarding her son's medical history, she waived her right to assert the physician-patient privilege with respect thereto (*Scharlack v Richmond Mem. Hosp., supra*, at p 888; *see also, Yetman v St. Charles Hosp.*, 112 AD2d 297; *Herbst v Bruhn, supra*, at pp 548-549). The privilege having been waived, defendant was entitled to depose Mrs. Riccardi's son's pediatricians and to examine the relevant medical records. Mollen, P. J., Bracken, Brown and Rubin, JJ., concur.