■ JEHAN DE SILVA, Appellant, v STUART T. ROSENBERG et al., Respondents.—In a medical malpractice action, the plaintiff appeals from an order of the Supreme Court, Nassau County (Roncallo, J.), entered November 29, 1985, which (1) granted the respective motions of the defendant Long Island Jewish Hillside Medical Center and of the defendants Neimand and Rosenberg, to direct compliance with their demands for medical authorizations; and (2) denied the plaintiff's cross motion for a protective order with respect to certain of the medical authorizations demanded.

Ordered that the order is modified, by (1) deleting therefrom the provisions granting the motions of the defendant Long Island Jewish Hillside Medical Center and of the defendants Rosenberg and Neimand, and substituting therefor provisions granting said motions to the extent that only those medical records of Padmani De Silva specified by the defendants that relate to her miscarriage in 1975, her treatment with psychiatric medication for the period commencing 10 months prior to that miscarriage until the birth of the plaintiff, and her medical treatment while the plaintiff was *in utero,* and a "baby book" as specified in the plaintiff Long Island Jewish Hillside Medical Center's notice to produce, dated July 19, 1985, shall be discoverable, and (2) deleting therefrom the provision denying the plaintiff's cross motion for a protective order and substituting therefor a provision denying that cross motion with respect to the aforementioned items, and otherwise granting that cross motion with respect to all other items demanded by the defendants. As so modified, the order is affirmed, without costs or disbursements.

The action at bar, commenced by Padmani De Silva on behalf of her son Jehan, seeks damages for the alleged medical malpractice of the defendant doctors and hospital in the delivery, prenatal and postnatal care of the infant plaintiff. Shortly after the commencement of the action a deposition was conducted, at which, it is conceded, Mrs. De Silva testified at length with respect to her own medical history concerning the period prior to her pregnancy with the infant, disclosing, *inter alia,* that she had been treated with certain drugs for a

psychiatric condition in 1975 and prior thereto, and further revealing that she had experienced a miscarriage in 1975, approximately two years before the birth of the infant plaintiff in 1977. Following the deposition, each defendant served notices of discovery and inspection, seeking various medical authorizations to obtain the records of hospitals, physicians and pharmacies pertaining to medical care and treatment rendered to both the infant plaintiff and Mrs. De Silva. Mrs. De Silva complied with the demands insofar as they requested authorizations for the infant and for her medical care and treatment during the period when the infant was *in utero.* Mrs. De Silva, however, declined to provide authorizations relating to medical treatment prior to her pregnancy with the infant, arguing that such records were protected by the physician-patient privilege. In September of 1985, the defendant hospital moved for an order directing the plaintiff to comply with the previously served notices of discovery and inspection. A motion for similar relief was made by the defendant doctors. The plaintiff thereafter cross-moved for a protective order vacating the defendants' notices of discovery and inspection with respect, *inter alia,* to requests for authorizations relating to records predating the period during which the infant was *in utero.* By order entered November 29, 1985, Special Term denied the plaintiff's cross motion for a protective order and granted the defendants' respective motions directing compliance with the defendants' notices. The plaintiff now appeals. We conclude that Special Term's order should be modified to permit limited discovery of the disputed items sought.

As this court has recently stated, "[t]he physician-patient privilege prohibits, in the absence of a waiver by the patient, disclosure by a physician of information acquired in attending a patient in a professional capacity, and which was necessary to enable the physician to act in that capacity" *(Riccardi v Tampax, Inc.,* 113 AD2d 880, 881; CPLR 4504 [a]; *see also, Williams v Roosevelt Hosp.,* 66 NY2d 391). It is settled under the decisions of this court, moreover, that in cases of this nature, where the infant's mother is either a representative plaintiff or a nonparty, she has not placed her own medical history in issue *(see, Yetman v St. Charles Hosp.,* 112 AD2d 297, 298; *Herbst v Bruhn,* 106 AD2d 546; *Scharlack v Richmond Mem. Hosp.,* 102 AD2d 886; *Hughson v St. Francis Hosp.,* 93 AD2d 491). Thus, "[w]hile case law clearly holds that the mother's medical records pertaining to the period when the infant was *in utero* are discoverable based upon the theory

of impossibility of severance * * * her other medical records remain protected by the privilege" *(Yetman v St. Charles Hosp., supra,* at 298). The physician-patient privilege, however, may be waived. Waiver occurs when "the patient personally or through his witnesses, either lay or medical, introduces testimony or documents concerning privileged information, or when the legal representative of a deceased patient presents such evidence" *(Hughson v St. Francis Hosp., supra,* at 500; *see also, Riccardi v Tampax, Inc., supra,* at 881; *Herbst v Bruhn, supra,* at 546). At bar, it is conceded by the plaintiff in his brief that at her examination before trial Mrs. De Silva revealed privileged medical information by answering questions "as to her personal medical background and condition, as well as her care and treatment prior to her pregnancy". Moreover, the record provides no support for the plaintiff's contention that the physician-patient privilege was invoked at the examination before trial. In light of the foregoing, we conclude that the privilege has been waived in connection with medical records concerning Mrs. De Silva's 1975 miscarriage and her treatment with psychiatric medication. However, we are limiting that disclosure to the period from 10 months prior to her miscarriage until the birth of the infant, since disclosure for a longer period would be overbroad and overly intrusive. Finally, we further conclude that the plaintiff should be required to produce the baby book prepared by Mrs. De Silva concerning the infant plaintiff. Mangano, J. P., Lawrence, Weinstein and Kooper, JJ., concur.