■ LINDSAY DE COSTE, as Administrator of the Estate of DARWIN A. DE COSTE, Deceased, Respondent, v CHAMPLAIN VALLEY PHYSICIANS HOSPITAL et al., Appellants.—Yesawich, Jr., J. Appeal from a judgment of the Supreme Court (Viscardi, J.), entered April 7, 1988 in Clinton County, upon a verdict rendered in favor of plaintiff.

Plaintiff's decedent, Darwin A. De Coste, a 32-year-old custodial worker, was taken by ambulance to defendant Champlain Valley Physicians Hospital in Clinton County on January 8, 1984 at 1:14 A.M., complaining of intermittent chest pain and a headache. Decedent reported to the emergency room doctor, defendant William Amsterlaw, that he had a history of high blood pressure for which he was taking medication and that he had had a negative stress test the previous spring. As decedent's blood pressure was elevated, Amsterlaw ordered an electrocardiogram; an abnormal reading was obtained. Amsterlaw diagnosed decedent's problem as reflux esophagitis based primarily on the positional nature of the pain, i.e., the pain was worse when decedent was lying down than when he was sitting up, and the apparent effectiveness of medication administered for that condition. Decedent was discharged shortly before 2:00 A.M. and about 12 hours later suffered a fatal cardiopulmonary arrest. An autopsy revealed severe arteriosclerosis and a myocardial infarction caused by a coronary artery occlusion.

Plaintiff, who is decedent's brother and the administrator of decedent's estate, brought this wrongful death action in November 1984. At the time of his death decedent was divorced, but frequently visited his two daughters, then ages 10 and 12, and provided them with financial support. Following trial, a jury awarded pecuniary damages of $53,000 and funeral expenses of $4,847. Defendants then moved unsuccessfully to set aside the verdict as excessive or to reduce the award by the amount of Social Security benefits received by decedent's daughters, the ultimate beneficiaries of the wrongful death award. Defendants appeal; we affirm.

Defendants first assert that the jury's finding of malpractice is against the weight of the evidence. However, viewed in the light most favorable to plaintiff, the evidence provides rational support for the jury's verdict (see, Roucek v Hewson, 141 AD2d 897, 898). Plaintiff's expert testified that Amsterlaw's conduct fell short of the standard of care exercised by emergency room practitioners at the time by failing to administer a blood enzyme test, which would have indicated decedent's cardiac status, and by discharging decedent with an abnormally high blood pressure reading and an abnormal electrocardiogram without consulting decedent's treating physician, in spite of chest pain which could have been indicative of cardiac distress as well as reflux esophagitis. Moreover, the medical malpractice panel which heard the case unanimously recommended a finding of malpractice. That Amsterlaw's mistake was understandable given the patient's age and classic symptoms of heartburn does not make the mistaken diagnosis any less compensable.

Defendants also argue that Amsterlaw's misdiagnosis was not the proximate cause of decedent's death. While it is true that all the medical experts agreed that decedent did not have long to live, regardless of treatment, because of the severity of his arteriosclerosis, plaintiff's expert testified that hospital care, including a cardiac monitor, the availability of oxygen and an intravenous line, would have certainly decreased the likelihood of decedent suffering a heart attack as well as diminished the severity of any heart attack suffered. That decedent would not have lived much longer even with hospital care goes to the issue of damages rather than the proximate cause of his death.

Finally, defendants contend that the award should be reduced by the amount of Social Security benefits received by decedent's estate and his beneficiaries; his daughters receive Social Security payments totaling $616 per month. CPLR 4545

(a) provides that a court may consider income from a collateral source, such as Social Security, that indemnifies or replaces medical care expenses or economic loss sought in a medical malpractice action. This legislation was not made applicable to wrongful death actions until 1986 (CPLR 4545 [c], as added by L 1986, ch 220, § 36, eff June 28, 1986) long after the instant action was commenced. The Legislature's decision not to bring wrongful death actions within the scope of this collateral source rule until 1986 and not to enlarge its application retroactively (see, L 1986, ch 220, § 46; see also, Fasano v Goldman, 113 Misc 2d 215, 216) should not be subverted by the courts (see, McKinney's Cons Laws of NY, Book 1, Statutes § 74). Prior to its expansion, this rule was applied very narrowly so that only pure malpractice actions came within its reach (see, McLaughlin, 1984 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 7B, CPLR 4545 [1988 Supp Pamph], at 458-459, citing Huntley v State of New York, 62 NY2d 134). That the tort underlying a wrongful death may have been occasioned by medical malpractice is irrelevant in view of the markedly different character of collateral sources turned to in the two types of actions: in wrongful death, the collateral source is typically life insurance or other death benefits for survivors, whereas in medical malpractice, the collateral source is health insurance or disability benefits. Thus the kind of collateral source envisaged by the Legislature in the pre-1986 CPLR 4545 does not include Social Security death benefits.

Defendants' remaining arguments are either unpreserved for review or devoid of merit.

Judgment affirmed, with costs. Casey, J. P., Mikoll, Yesawich, Jr., Levine and Mercure, JJ., concur.