KAREN SCALONE, Individually and as Administratrix of the Estate of GLEN SCALONE, Deceased, Appellant, v PHELPS MEMORIAL HOSPITAL CENTER et al., Respondents.

Second Department, December 7, 1992

66

## APPEARANCES OF COUNSEL

*Pegalis & Wachsman, P. C.,* Great Neck *(Rhonda L. Meyer* of counsel), for appellant.

*O'Connor, McGuinness, Conte, Doyle, Oleson & Collins,*

White Plains *(Mary Pat Burke* of counsel), for Phelps Memorial Hospital Center and others, respondents.

*Pilkington & Leggett,* White Plains *(Dennis A. Vernoia* of counsel), for George N. Pappas and another, respondents.

OPINION OF THE COURT

BALLETTA, J.

■ The major issue raised on this appeal is whether the plaintiff waived her physician-patient privilege with respect to her own medical history simply because she commenced this wrongful death action as the personal representative and distributee of the estate. We hold that she did not.

This action was commenced by the plaintiff, Karen Scalone, in her capacity as administratrix of the estate of the decedent, Glen Scalone, her husband, and individually, to recover damages for wrongful death based on alleged medical malpractice and lack of informed consent. The defendants Phelps Memorial Hospital Center, Anthony A. Maglione, Martin G. Wertkin, Young Woo Choi, Saran S. Rosner, and Saran S. Rosner, M.D., P. C., moved and the defendants George N. Pappas, and George N. Pappas, M.D., P. C., separately moved, *inter alia,* for a further deposition of the plaintiff due to her refusal to answer questions at her first deposition on the subjects of her medical history and of the death benefits she received as a result of the death of her husband. The plaintiff cross-moved for a protective order with respect to the information sought, for further particulars relating to the affirmative defenses of informed consent and for a stay of nonparty depositions. The court granted the motion and separate motion for further disclosure and denied the plaintiff's cross motion. The plaintiff then brought this appeal.

I

As a preliminary matter, we must first address the contention that the order of the Supreme Court is not appealable as of right and that, since permission to appeal has not been granted, the plaintiff's appeal must be dismissed.

The plaintiff points out that only part of her appeal pertains to the granting of a further deposition, and, with respect to that aspect of the appeal, she argues that she need not seek leave to appeal as it pertains to a substantial right and involves novel issues of law. Specifically, the plaintiff asserts

that the compelled disclosure of privileged information, i.e., her medical records, affects a substantial right and that the issue of the compelled disclosure of life insurance and death benefits is a novel one which should be decided on the merits.

■ It is well settled that no appeal as of right lies from an order directing a party to answer questions propounded at an examination before trial (see, *Daly v Genovese,* 96 AD2d 1027; *Hughson v St. Francis Hosp.,* 93 AD2d 491, 495; *Matter of Beeman,* 108 AD2d 1010, 1011). Similarly, no appeal lies as of right from an order granting a further deposition of a witness already deposed (see, *Ielovich v Taylor Mach. Works,* 128 AD2d 676; *Sainz v New York City Health & Hosps. Corp.,* 106 AD2d 500). However, where an appeal raises issues of "novelty and significance", this Court may elect to treat an appellant's notice of appeal as an application for leave to appeal pursuant to CPLR 5701 (c) and thereupon grant leave to appeal (see, *Hughson v St. Francis Hosp., supra; Daly v Genovese, supra).* We find that the legal and factual issues raised in regard to the Supreme Court's order directing further depositions are sufficiently novel and significant to justify this court exercising its power under CPLR 5701 (c) (see, *Hughson v St. Francis Hosp., supra).* Accordingly, we shall treat the plaintiff's notice of appeal as an application for leave to appeal and grant leave to appeal.

## II

The plaintiff contends that her medical records and any confidential communications that she may have had with her treating physicians constitute privileged information which is not discoverable under the disclosure provisions of CPLR 3101 and 3121. She asserts that a widow, acting as a distributee and legal representative, does not put her own physical condition in issue merely by commencing a wrongful death action.

The defendants contend that by commencing this action, the plaintiff has placed her own health, age, and circumstances in controversy. They argue that the plaintiff's medical history and records are relevant to the extent that they can vary the application of the life expectancy tables on the durational measurement of the plaintiff's claim. Accordingly, they maintain that the court properly ordered discovery of the subject information and records.

Pursuant to CPLR 3101 (a), "[t]here shall be full disclosure of all evidence material and necessary in the prosecution or

defense of an action, regardless of the burden of proof". The Court of Appeals has stated that the statutory language is: "to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason. CPLR 3101 (subd. [a]) should be construed, as the leading text on practice puts it, to permit discovery of testimony 'which is sufficiently related to the issues in litigation to make the effort to obtain it in preparation for trial reasonable' " (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406-407, quoting 3 Weinstein-Korn-Miller, NY Civ Prac ¶ 3101.07).

Although the discovery provisions of the CPLR are to be liberally construed (see, Cynthia B. v New Rochelle Hosp. Med. Ctr., 60 NY2d 452, 461) and the trial court possesses wide discretion in deciding whether the information sought is "material and necessary" (see, Allen v Crowell-Collier Publ. Co., supra, at 406), "this is not to say that carte blanche demands are to be honored, and those demands which are unduly burdensome or lack specificity or seek privileged matter or seek irrelevant information or are otherwise improper must be denied" (Andrew F. Capoccia, P. C. v Spiro, 88 AD2d 1100, 1101).

Thus, under CPLR 3101 (b), "[u]pon objection of a party privileged matter shall not be obtainable", and, under CPLR 3103 (a), "[t]he court may at any time on its own initiative, or on motion of any party or witness, make a protective order denying, limiting, conditioning or regulating the use of any disclosure device. Such order shall be designed to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts".

■ The regulation of the terms and provisions of disclosure so as to prevent abuse through the issuance of a protective order under CPLR 3103 is generally left to the sound discretion of the trial court (see, Matter of U. S. Pioneer Elecs. Corp. [Nikko Elec. Corp.], 47 NY2d 914, 916; see also, Nitz v Prudential-Bache Sec., 102 AD2d 914, 915; Oppenheimer v Shubitowski, 92 AD2d 1021, 1022; Matter of Westchester Rockland Newspapers v Marbach, 66 AD2d 335, 337). However, under the facts and circumstances of this case, it was an improvident exercise of discretion to grant the motions for further disclosure.

Pursuant to CPLR 4504 (a), a physician "shall not be

allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity" unless the patient waives the privilege of confidentiality. A litigant who has affirmatively placed his or her physical or mental condition in issue will be deemed to have waived the physician-patient privilege with respect to his or her own medical records *(see, Dillenbeck v Hess,* 73 NY2d 278, 287; *Koump v Smith,* 25 NY2d 287, 294; *Gandy v Larkins,* 165 AD2d 862; *Shapiro v Levine,* 104 AD2d 800, 801).

Within the context of a wrongful death action, it has been held that the personal representative waives any privilege relating to the decedent's "actual condition of health" immediately before his death *(see, Eder v Cashin,* 281 App Div 456, 460). Thus, the defendant in a wrongful death action may compel disclosure of the decedent's medical records or doctors' reports *(see, Prink v Rockefeller Ctr.,* 48 NY2d 309; *Brewer v Jamaica Hosp.,* 73 AD2d 851). However, the parties cite no authority for holding that merely by commencing a wrongful death action a personal representative or distributee waives his or her own doctor-patient privilege under CPLR 4504 (a).

The defendants rely upon the general rule that "[i]n a wrongful death action, the plaintiff tenders the issue of pecuniary loss sustained by the next of kin" *(Freeman v Corbin Ave. Bus Co.,* 60 AD2d 824, 825; *Eder v Cashin, supra).* In this regard, they point to several cases which have held that the life expectancy as well as the health and age of a distributee are matters which a jury may consider in determining the quantum of damages payable in a wrongful death action *(see, Hanson v County of Erie,* 120 AD2d 135, 138; *Windus v Baker,* 67 AD2d 833, 834; *Franchell v Sims,* 73 AD2d 1; *Woodard v Pancio,* 65 AD2d 923).

Our review of the cases leads to the conclusion that the nature of the case law taking the health of distributees into account is generally distinguishable from the case at hand. The four cases cited by the defendants involved situations where the parents are the plaintiff beneficiaries and are seeking compensation for the wrongful death of a child. The courts held that the age, health, and circumstances of the parent beneficiaries were relevant in determining the likelihood of deriving pecuniary benefit from the decedent beyond the decedent's minority, had the child lived, and what those benefits, if any, were worth. In each of those cases, the plaintiffs had to demonstrate that they were likely to have

received benefits from the decedent beyond the age of minority because an adult child has no legal obligation to provide services and/or monetary support to his or her parents *(see, e.g., Moyer v State of New York,* 175 AD2d 607).

On the other hand, in the case of *Lewkow v Gracie Sq. Hosp.* (114 Misc 2d 732, *affd* 123 AD2d 526), the plaintiff widow brought a medical malpractice wrongful death action when her husband committed suicide shortly after being discharged from the defendant hospital. The defendant claimed that the plaintiff, by bringing the action as legal representative and distributee, had waived her physician-patient privilege, so as to allow discovery of records of her psychiatric treatment. The defendant claimed that the plaintiff had put her psychological condition in issue by, *inter alia,* claiming the loss of the decedent's support and "loss of inheritance" and by supplying the decedent's medical and psychiatric history which included information about his "problems at home". Apparently, the defendant's theory was that the plaintiff's relationship with her deceased spouse, if it were infected with psychological problems, would affect the amount of recovery. The court would have none of it, noting that if it accepted the defendant's contention as correct, then the medical records of all distributees in all wrongful death cases would be in issue—an unsupportable proposition *(see, Lewkow v Gracie Sq. Hosp., supra,* at 733). Furthermore, the court stressed that absent waiver, medical records, even if they may be relevant and material, are not subject to disclosure *(see,* CPLR 4504 [a]). The court concluded that "[a]nalysis of the instant case does show that the plaintiff's status is (1) as a nominal party, as a legal representative, and (2) an actual party, as a distributee under EPTL 5-4.1. These factors alone are insufficient to overcome the strong public policy underlying the doctor-patient privilege in CPLR 4504 (subd [a]). The defendant has not otherwise sustained the heavy burden of proof necessary to spell out a waiver" *(Lewkow v Gracie Sq. Hosp., supra,* at 733).

The circumstances in *Lewkow (supra),* as well as in the case at bar, are analogous to those medical malpractice actions involving injuries at birth where the courts have held that a plaintiff mother does not waive her physician-patient privilege with respect to her own medical history, other than for that period when the infant was in utero, merely by acting in a representative capacity in an action in which the infant is the real party in interest *(see, Dalley v LaGuardia Hosp.,* 130 AD2d 543; *Herbst v Bruhn,* 106 AD2d 546; *Scharlack v Rich-*

*mond Mem. Hosp.,* 102 AD2d 886). In such cases, the mother will be deemed to have waived her privilege when, by her conduct, such as by answering questions relating to her medical history during an examination before trial, she has affirmatively placed her own medical history into issue *(see, De Silva v Rosenberg,* 129 AD2d 609). Even then, however, disclosure is limited to records covering the period when the infant was in utero, unless evidence is presented that the mother's medical history covering other periods is relevant *(see, Matter of New York County DES Litig.,* 168 AD2d 44; *Sibley v Hayes 73 Corp.,* 126 AD2d 629). In this regard, an attorney's bare, unsubstantiated, conclusory statement as to relevance is insufficient to establish the factual predicate for disclosure of the mother's medical records *(see, Herbst v Bruhn, supra).*

Similarly, in the instant case, the mere fact that the plaintiff has commenced this action as a personal representative and distributee is insufficient to effect a waiver of her privilege. In addition, the plaintiff admittedly refused to answer questions relating to her health at her deposition, thereby invoking her privilege under CPLR 3101 (b) and 4504 (a). Furthermore, the defendants' attorneys offered nothing more than bare, unsubstantiated, and conclusory statements as to the relevance of the information they sought.

Accordingly, we find that the plaintiff did not waive the physician-patient privilege with respect to her own medical history.

## III

The next issue to be resolved in this case is whether the defendants are entitled to disclosure as to certain "collateral source" information. The plaintiff argues that the respondents are not entitled to question her about "any and all death benefits whether received or not" and are not entitled to discover records relating thereto. She asserts that, as a matter of law, a defendant in a wrongful death case is not permitted to mitigate damages through proof of compensation from collateral sources, and that the court, therefore, erred in directing her to answer questions and provide authorizations for records on the subject of death benefits. The defendants, on the other hand, contend that all death benefit information is discoverable and that "collateral source" information regarding wrongful death claims is allowable pursuant to CPLR 4545 (a) and (c).

CPLR 4545 (c) provides, in part, as follows: "Actions for personal injury, injury to property or wrongful death. In any action brought to recover damages for personal injury, injury to property or wrongful death, where the plaintiff seeks to recover for the cost of medical care, dental care, custodial care or rehabilitation services, loss of earnings or other economic loss, evidence shall be admissible for consideration by the court to establish that any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from any collateral source such as insurance (except for life insurance), social security (except those benefits provided under title XVIII of the social security act), workers' compensation or employee benefit programs (except such collateral sources entitled by law to liens against any recovery of the plaintiff)".*

Prior to the enactment of the above provision in 1986, the receipt of compensation from collateral sources could not be relied upon to reduce either the plaintiff's recovery or the defendant's liability (see, Fox v Mercer, 109 AD2d 59, 63; De Coste v Champlain Val. Physicians Hosp., 147 AD2d 793, 795). Furthermore, disclosure of information or records relating to compensation from collateral sources could not be compelled (Fox v Mercer, supra; De Coste v Champlain Val. Physicians Hosp., supra).

Contrary to the defendants' contention, the case of Matos v St. John's Episcopal Hosp. (60 AD2d 909) does not stand for the proposition that information regarding life insurance as a collateral source was discoverable prior to 1986. In Matos, the decedent had apparently made an application to an insurance company to obtain life insurance coverage with which he had submitted medical records. The object of the Court's order in Matos, i.e., that the plaintiff execute authorizations permitting the defendants to inspect and obtain a copy of the insurance application and all medical records, was merely for the purpose of securing information relative to the decedent's health immediately prior to his death.

■ However, the plaintiff's argument that collateral source information is not allowable in a wrongful death action is without merit. As the plain language of CPLR 4545 (c) clearly indicates, the collateral source rule has been abolished with respect to wrongful death cases. More to the point, the statute

---

* CPLR 4545 (a) contains similar language but applies to actions to recover damages for medical, dental, or podiatric malpractice.

provides that evidence of collateral sources shall be admissible to mitigate, *inter alia,* damages for loss of earnings or other economic loss. This ties in neatly with EPTL 5-4.3 (a) which limits damages in wrongful death cases to "pecuniary injuries", i.e., "injuries measurable by money" such as loss of support, voluntary assistance and possible inheritance, as well as funeral expenses and medical expenses incidental to death *(see, Gonzalez v New York City Hous. Auth.,* 77 NY2d 663; *Odom v Byrne,* 104 AD2d 863). Collateral source information may now be used to reduce the amount of such "pecuniary injuries" *(see, Frey v Smith & Sons,* 751 F Supp 1052).

Since the instant action was commenced after the effective date of CPLR 4545 (c), it cannot seriously be argued that the statute does not apply. Thus, the defendants are entitled to some disclosure of collateral sources *(see, Eaton v Chahal,* 146 Misc 2d 977; *Fleming v Bernauer,* 138 Misc 2d 267; *McKenzie v St. Elizabeth Hosp.,* 81 AD2d 1003).

This is not to say that the defendants are entitled to go on a fishing expedition. The statute expressly makes an exception for life insurance, benefits provided under Social Security Act title XVIII, and collateral sources entitled by law to liens against any recovery of the plaintiff. The defendants' demands for "any and all" death benefit and insurance information was, therefore, clearly overbroad in its scope.

Accordingly, to the extent that the court's order granting the defendants' motion and separate motion compels discovery of information relating to life insurance and other death benefits specifically excluded by CPLR 4545, it was erroneous and the plaintiff need not provide that information.

## IV

■ We further find that it was an improvident exercise of discretion to hold that the plaintiff must serve a further bill of particulars in connection with her lack of informed consent claim before the defendants serve bills of particulars regarding the affirmative defenses of informed consent *(see,* Public Health Law § 2805-d). The plaintiff's original bills of particulars were adequate, and the defendants, who raised Public Health Law § 2805-d as an affirmative defense in their answers, have the burden of proof with respect thereto. Accordingly, the plaintiff was clearly entitled, without any conditions attached, to particulars as to those defenses *(see, Sollazzo v Edelman,* 142 AD2d 572; *Forney v Huntington Hosp.,* 134 AD2d 405; *Rubino v Albany Med. Ctr. Hosp.,* 117 AD2d 909).

■ Additionally, the court erred in directing the plaintiff to respond to item 11 in the defendant Sim Khoo Chen's demand for a bill of particulars that she "set forth those known and material risks and hazards surrounding the treatment of decedent". Such a demand is palpably improper as it calls for expert information and is purely evidentiary *(see, McKenzie v St. Elizabeth Hosp.,* 81 AD2d 1003, supra; *Patterson v Jewish Hosp. & Med. Ctr.,* 94 Misc 2d 680, *affd* 65 AD2d 553). The purpose of a bill of particulars is to amplify the pleadings, limit proof, and prevent surprise at trial; it is not an evidence-gathering device *(see, Kenler v Weissbach,* 61 AD2d 976; *Palazzo v Abbate,* 45 AD2d 760; *Di Lorenzo v Ellison,* 114 AD2d 926).

## V

■ We further find that it was an improvident exercise of discretion to deny that branch of the plaintiff's cross motion which was for a protective order staying nonparty depositions.

The only issue with respect to nonparty depositions raised on the hearing of the cross motion in the Supreme Court was the question of whether the defendants' depositions should be accorded priority over nonparty depositions. No issue was raised concerning whether "special circumstances" existed to justify the taking of a deposition from any nonparty or whether the subject matter of the testimony sought to be elicited from a particular nonparty was relevant or material to the issues to be litigated. Thus, the only question for the Supreme Court was one of priority of depositions.

CPLR 3106, which provides for the priority of depositions, states, in pertinent part:

"(a) Normal Priority. After an action is commenced, any party may take the testimony of any person by deposition upon oral or written questions. Leave of the court, granted on motion, shall be obtained if notice of the taking of the deposition of a party is served by the plaintiff before that party's time for serving a responsive pleading has expired.

"(b) Witnesses. Where the person to be examined is not a party * * * he shall be served with a subpoena."

It is apparent from the foregoing that after a defendant has served his answer, the party who first notices a deposition gets priority. However, the order of priority established in CPLR 3106 can be varied by the court under its CPLR 3103 protec-

tive order powers *(see,* Siegel, NY Prac § 354, at 442). Moreover, "[w]hen the disclosure process is used to harass or unduly burden a party, a protective order eliminating that abuse is necessary and proper" *(Barouh Eaton Allen Corp. v International Bus. Machs. Corp.,* 76 AD2d 873, 874).

In view of the plaintiff's evidentiary showing of abuse of the disclosure process by the defendants, in that they refused to appear for depositions, and the failure of the defendants to demonstrate the relevance of the information to be elicited at nonparty depositions or special circumstances warranting such depositions, the court should have stayed nonparty depositions until the completion of the defendants' depositions.

MANGANO, P. J., BRACKEN and O'BRIEN, JJ., concur.

Ordered that the plaintiff's notice of appeal is treated as an application for leave to appeal from so much of the order as directed a further deposition of the plaintiff, and leave to appeal from that part of the order is granted *(see,* CPLR 5701 [c]); and it is further,

Ordered that the order is modified by (1) deleting the provisions thereof which granted those branches of the motion and separate motion which were to compel disclosure of the plaintiff's medical records, and death benefits excluded under CPLR 4545, and denied those branches of the plaintiff's cross motion which were for a protective order with respect to that material, and to compel the defendants to appear for depositions, and substituting, therefor a provision denying those branches of the motion and separate motion, and granting those branches of the plaintiff's cross motion, (2) deleting the provision thereof which directed the plaintiff to serve and file a further bill of particulars with respect to lack of informed consent and to answer item 11 of the bill of particulars of Sim Khoo Chen, and (3) adding a provision thereto staying nonparty depositions until the completion of the defendants' depositions; as so modified, the order is affirmed insofar as appealed from, with costs payable by the respondents Phelps Memorial Hospital Center, Anthony A. Maglione, Martin G. Wertkin, Young Woo Choi, Saran S. Rosner, Saran S. Rosner, M.D., P. C., George N. Pappas, and George N. Pappas, M.D., P. C., appearing separately and filing separate briefs, and the matter is remitted to the Supreme Court, Westchester County, to set forth a new schedule for disclosure.